973 So.2d 4 (2007)
Grace WONG
v.
Mitchell J. HOFFMAN, Hillary Hurst Landry, and Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P.
No. 2005-CA-1483.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 2007.
*5 Robert H. Matthews, Pauline M. Warriner, New Orleans, LA, for Plaintiff/Appellant.
Harry Rosenberg, Allen C. Miller, Phelps Dunbar LLP, New Orleans, LA, for Defendants/Appellees.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR.).
MURRAY, Judge.
The plaintiff, Grace Wong, appeals a series of district court judgments, which together resulted in the trial court's dismissal, with prejudice, of Ms. Wong's legal malpractice suit. For the following reasons, we reverse the trial court's initial judgment, which held that Ms. Wong's suit was perempted pursuant to La. R.S. 9:5606, and also granted defendants' exception of no cause of action. In view of this disposition, we do not reach the remaining issues.
FACTS AND PROCEEDINGS BELOW
Ms. Wong filed suit February 5, 2003, against Mitchell Hoffman and Hillary Landry, two attorneys who had represented her in her divorce and child custody/child support proceedings; their law firm, Lowe, Stein, Hoffman, Allweiss & Harver, L.L.P.; and their professional liability insurer, Underwriters at Lloyd's. In her petition, plaintiff described with particularity four specific instances in which the defendants' representation of her allegedly had deviated below the standard of care for attorneys practicing within the community. According to the petition, the first of these instances occurred in the summer of 2000 during the plaintiff's first meeting with Mr. Hoffman when he advised her to *6 agree to joint custody of her children;[1] the second occurred during a two-day hearing on June 29 and July 31, 2001 when Mr. Hoffman failed to object to the testimony of a particular expert witness who had served as a mediator in the case; the third occurred on February 14, 2002, when Ms. Landry appeared in court on Ms. Wong's behalf without Ms. Wong's knowledge and entered into a consent judgment without authority from Ms. Wong;[2] and the fourth occurred on April 4, 2002 during the taking of Ms. Wong's deposition by her ex-husband's counsel, when Mr. Hoffman failed to object to certain questions as being barred by the attorney/client privilege. As a result of these four incidents and "any and all other such acts of negligence as will be shown at . . . trial," Ms. Wong alleged she had suffered damages including loss of earnings, employment and economic opportunities; attorneys fees and court costs; and severe mental anguish, suffering and inconvenience.
In response to Ms. Wong's petition, defendants filed an answer asserting affirmative defenses, an exception of peremption and an exception of failure to state a cause of action. By the exception of peremption, defendants urged that plaintiffs claims were barred on the face of the petition because they were not filed within the applicable time periods set forth by La. R.S. 9:5605. By the exception of no cause of action, defendants argued that Ms. Wong had failed to state a cause of action with regard to the April 4; 2002 deposition because she had not alleged that any damage was caused her by her attorney's failure to raise the objection of privilege. After a hearing, the trial court granted the exceptions in open court on November 7, 2003, and signed a judgment to that effect on November 21, 2003, dismissing the plaintiffs claims with prejudice. In that judgment, however, the trial court also granted plaintiff leave to file an amended petition for the sole purpose of challenging the constitutionality of La. R.S. 9:5605, the legal malpractice peremption statute. Plaintiff filed her amended petition, and also appealed the November 21, 2003 judgment, but her appeal was dismissed on the grounds that the judgment was not final.
In response to Ms. Wong's amended petition, the defendants filed exceptions of res judicata and failure to state a cause of action. By the exception of res judicata, defendants argued that to the extent plaintiff had attempted to re-urge her original allegations of malpractice in her amended petition, her claims were precluded. The defendants' exception of no cause of action was directed to plaintiffs allegations regarding the unconstitutionality of La. R.S. 9:5605. The plaintiff opposed these exceptions, and the defendants additionally filed a motion to strike certain exhibits and affidavits attached to the plaintiffs opposition *7 memorandum.[3] On January 4, 2005: the trial court rendered judgment granting the exception of res judicata and the motion to strike, but denying the exception of no cause of action as to the constitutional challenge.
Defendants then filed a motion for summary judgment seeking a declaration that the statute was constitutional. In defense of this motion, plaintiffs counsel noticed the deposition of Judge Dennis Bagneris, who had been a state senator during the time La. R.S. 9:5605 was adopted, seeking to question him as to his perception of the Legislature's mental processes in enacting the statute. The defendants filed a motion to quash the taking of the deposition, which motion the trial court granted by judgment dated May 2, 2005.
On June 3, 2005, the trial court heard the defendants' motion for summary judgment. On June 13, 2005, the trial court, granted summary judgment upholding the constitutionality of La. R.S. 9:5605 and dismissing with prejudice plaintiff's remaining claims.
Ms. Wong now appeals, arguing that the trial court's initial judgment dismissing her legal malpractice claims on the basis of peremption and/or the failure to state a cause of action is erroneous. Additionally, Ms. Wong raises three assignments of error related to the dismissal of her constitutional challenge of the legal malpractice peremption statute: (1) that the trial court erred by granting the motion to strike the affidavits she offered in opposition to defendants' exception of no cause of action;; (2) that the trial court erred by quashing the deposition of Judge Bagneris; and (3) that the trial court erred by granting summary judgment upholding the statute's constitutionality. We first address the issue of whether Ms. Wong's legal malpractice allegations are perempted.
EXCEPTION OF PEREMPTION
On appeal, Ms. Wong makes two arguments challenging the trial courts granting of the exception of peremption. First, she argues that the trial court erred procedurally because Louisiana law does not recognize a peremptory exception of peremption. Specifically, plaintiff contends that La. C.C.P. art. 927, which denotes the peremptory exceptions, does not include an exception of peremption. Plaintiff additionally notes that this court has held that the proper procedural device for raising the issue of peremption is an exception of no cause of action. See International River Center v. Henry C. Beck Co., 95-1396, p. 2 (La.App. 4 Cir. 4/10/96), 672 So.2d 1160, 1161; Azar-OBannon v. Azar, 00-0101, p. 4 (La.App. 4 Cir. 9/27/00), 770 So.2d 458, 461.
Addressing this argument, we note that Louisiana appellate courts have taken three different approaches with regard to the proper means of raising the issue of peremption: (1) The issue may be raised by means of an exception of no cause of action. (See, e.g.: International River Center v. Henry C. Beck, Co., supra; Azar-OBannon v. Azar, supra); (2) The issue may be raised by means of an exception of prescription. (See, e.g.: Poree v. Elite Elevator Services, Inc., 94-2575 (La. App. 4 Cir. 11/16/95), 665 So.2d 133; Sala v. Asher, 01-1038, p. 4 (La.App. 1 Cir. *8 7/10/02), 825 So.2d 1257, 1259 n. 5); and (3) Because La. C.C.P. art. 927 specifically states that the objections which may be raised through the peremptory exception include but are not limited to those listed in the article, peremption may be raised as a peremptory exception in its own right. (See, e.g.: Dauterive Contractors, Inc. v. Landry and Watkins, 01-1112, pp. 7-8 (La.App. 3 Cir. 3/13/02), 811 So.2d 1242, 1248-49).
Generally, however, the decision as to which procedural vehicle is used to raise the issue of peremption has only one relevant consequence: it determines whether or not evidence may be introduced to support or controvert the exception, as is permitted in the case of an exception of prescription but is prohibited in the case of an exception of no cause of action, which must be decided on the face of the petition. See, e.g.: Perez v. Trahant, 00-2372, pp. 5-7 (La.App. 1 Cir. 12/28/01), 806 So.2d 110, 115-116. In the instant case, however, as no evidence was submitted at the hearing on the exception of peremption, we need not decide whether the trial court was correct in considering the exception as one of peremption rather than as an exception of no cause of action or prescription.
Turning to the merits of the exception, Ms. Wong contends that her claims were timely filed pursuant to La. R.S. 9:5605, and that the trial court erred by finding them to be perempted.
La. R.S. 9:5605 provides, in pertinent part:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization; association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive *9 period shall be governed exclusively by this Section.
The plaintiffs petition alleged four separate acts constituting malpractice, the first of which occurred in the summer of 2000 and the last of which occurred in April of 2002. The petition was filed on February 5, 2003. According to the statute, a legal malpractice claim is perempted if not filed within one year of the alleged act of malpractice or within one year of the date the alleged act was discovered or should have been discovered, but if the date of discovery is used, the suit must be filed within three years of the alleged act. Under Louisiana law, the appropriate standard to determine whether a plaintiff "knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice" is that of a reasonable man. Turnbull v. Thensted, 99-0025, p. 8 (La. App 4 Cir. 3/1/00), 757 So.2d 145, 150 (citing Griffin v. Kinberger, 507 So.2d 821 (La.1987)). Therefore, the pertinent inquiry is to determine when Ms. Wong possessed knowledge sufficient to place a reasonable lay person on notice that legal malpractice had occurred.
In her appellate brief and in her counsel's argument at the hearing on the exception, Ms. Wong conceded that she possessed knowledge sufficient to state a malpractice claim on February 17, 2002, when she learned three days after the fact that Ms. Landry had entered into a consent judgment on her behalf without her knowledge or permission. Ms. Wong's petition was filed within a year of this date, and within three years of the first alleged incident of malpractice, which occurred during the summer of 2000 at the plaintiffs first contact with Mr. Hoffman. Nevertheless, at the hearing on the exception, the defendants argued that Ms. Wong's entire petition was perempted because, according to the "continuing representation" rule, her claim could not be broken up into four distinct acts of malpractice, but instead must be treated as one entity during the entire time her former attorneys represented her. The transcript of the hearing clearly shows that the trial court agreed with this argument. Therefore, at the conclusion of the hearing, the trial judge reasoned that because of the "continuum of representation," she was dismissing the plaintiff's entire petition based upon Ms. Wong's failure to file her claim within one year of "the original representation of this beginning in October of 2000."
We agree with Ms. Wong that the trial court erred by dismissing her petition as perempted. As noted above, because the petition was filed within a year of the third and fourth alleged incidents of malpractice, on the face of the petition, those claims were timely filed within the terms of the statute. Moreover, we find that the trial court's reliance upon the continuing representation principle to support the dismissal of those claims was legal error. In Reeder v. North, 97-0239, pp. 6-7 (La.10/21/97), 701 So.2d 1291, 1295-96, the Louisiana Supreme Court held that the peremptive periods set forth in La. R.S. 9:5605 cannot be suspended during the defendant attorney's "continuing representation" of the plaintiff. The Supreme Court reasoned that, unlike a prescriptive period, a peremptive period cannot be suspended or interrupted. Therefore, while continuing representation may be asserted by the plaintiff to defeat an exception of prescription, it is not applicable to defeat an exception of peremption.
Despite Reeder, however, the defendants herein argued, and the trial court accepted, that their continuing representation of Ms. Wong supported their exception of peremption by mandating that the trial *10 court consider Ms. Wong's petition as alleging one continuous act of malpractice rather than four distinct ones. In support of this argument, which they reiterate in this court, the defendants cite Taussig v. Leithead, 96-0960 (La.App. 3 Cir. 2/19/97), 689 So.2d 680. We find defendants' reliance upon Taussig to be misplaced. As Taussig was decided before Reeder, the Third Circuit's opinion, to the extent that it relied upon the continuing representation rule to find that there was only one tort (that of negligent representation) for purposes of peremption, has no precedential or persuasive value. Moreover, Taussig is factually distinguishable from the instant case. In Taussig, the plaintiff filed her malpractice suit on September 1, 1993, thirteen years after the attorney's representation of her (from 1977 to 1980) had ended. However, the suit was filed within a special window period noted in La. R.S. 9:5605(B); the statute specifically provides that if the plaintiff's lawsuit is filed prior to September 7, 1993, the three-year peremption period is not applicable. 96-960, p. 3, 689 So.2d at 683. In deciding that the plaintiff's suit was nevertheless barred by the one-year peremptive period, the Third Circuit in Taussig affirmed the trial court's factual finding that the latest date upon which plaintiff reasonably should have discovered her attorney's negligence was in 1980, thirteen years prior to filing suit, 96-960, p. 8, 689 So.2d at 685.
Considering its facts, we find that the Taussig decision has no relevance to the instant case, in which Ms. Wong filed suit within three years of her first contact with the defendant attorneys and within one year of the occurrence of the third and fourth acts of malpractice alleged by her. We also note that the interpretation of Taussig the defendants urge us to accept would lead to absurd results. Under that interpretation, which we find is contrary to Reeder, a plaintiffs entire legal malpractice suit would be barred if it was not filed within one or three years, respectively, of the first time plaintiff's counsel acted in a way that could be interpreted as negligence. Such a rule would negate the right of a client who believes his counsel has been negligent to forgive one or more potential or arguable acts of malpractice, but then decide to file suit later when the attorney does something more egregious that the client is not willing to forgive.
In the instant case, wherein the plaintiff has alleged defendants committed four distinct acts of malpractice, the dates of occurrence of which are specified in the petition, we conclude that in view of Reeder, each separate act of malpractice must be considered to be a separate cause of action with its own one-year and three-year peremptive period. Having thus determined that Ms. Wong's third and fourth alleged claims of malpractice are not perempted from the face of the petition, we must consider whether the trial court also erred by dismissing her first and second claims, which occurred more than one but less than three years prior to the date she filed suit. Regarding those allegations, Ms. Wong argues she did not discover that her attorneys' actions potentially constituted malpractice until sometime after the occurrence of the fourth incident on April 4, 2002, at which point she became so distressed about the defendants' representation of her that she consulted another attorney, who then advised her concerning her malpractice claims. Therefore, with regard to each of the first two alleged acts of malpractice, we must determine whether Ms. Wong's knowledge comported with that of a reasonable lay person faced with the same circumstances. See Turnbull v. Thensted, supra.
Ms. Wong's first allegation is that Mr. Hoffman advised her to agree to joint *11 custody of her children (which was provided for in the consent judgment between Ms. Wong and her spouse dated October 6, 2000), despite his knowing that Ms. Wong's spouse had physically abused her and that Ms. Wong wanted to relocate to another state with her children. The defendants argue that Ms. Wong should have known at the time she entered into the joint custody agreement that her attorney's advice to do so fell below the standard of care. We disagree. While Ms. Wong may have been uncomfortable or uneasy about consenting to joint custody, we cannot conclude that a reasonable lay person would have realized at that time that her attorney's advice to do so might be considered malpractice. As joint custody is clearly preferred in the law, it is, not reasonable to expect a non-lawyer to recognize what circumstances would likely merit an exception to the general rule, We therefore find that Ms. Wong's suit, which was filed within a year of her consultation with the new attorney and within three years of the entering of the consent judgment, was timely with respect to this alleged act of malpractice.
The second act of malpractice alleged by Ms. Wong is her attorney's failure, during the hearing on her request to relocate with her children, to object to the testimony of an expert witness on the basis that the expert had previously served as a court-appointed mediator in the case. This hearing took place in the summer of 2001. Again, Ms. Wong contends she was not aware that Mr. Hoffman's failure to raise this particular objection[4] could potentially constitute malpractice until she was so informed by her new attorney in April, 2002. The defendants argue, however, that Ms. Wong possessed sufficient knowledge to put her on notice that Mr. Hoffman's conduct could be considered malpractice on August 25, 2001, when the district court rendered judgment denying Ms. Wong's request to relocate. We disagree. It is ludicrous to suggest that a reasonable lay person would know the import of an attorney's failure to raise a particular legal objection. We also reject defendants' suggestion that the mere fact that the trial court ruled against Ms. Wong on her motion to relocate should have raised an inference in her mind that her attorney was negligent. Therefore, we conclude that Ms. Wong's suit was also timely, filed with respect to her second allegation of malpractice.
Accordingly, we find that the trial court erred by dismissing the plaintiffs petition on the basis of peremption.
EXCEPTION OF FAILURE TO STATE A CAUSE OF ACTION
Defendants filed an exception of no cause of action as to the plaintiffs fourth alleged claim of malpractice, arguing that the plaintiff had neglected to assert that she was damaged by her attorney's alleged negligence in failing to object to certain questions posed to her at her deposition. Although the trial court's written judgment of November 21, 2003 reflects that this exception was granted, nothing else in the record indicates that the trial court actually considered this exception separately from the exception of peremption (which plaintiff argued should properly be treated by the trial court as an exception of no cause of action). On appeal, Ms. Wong raises as her first assignment of error the trial court's granting of the "Peremptory Exceptions of Peremption and/or No Cause of Action on November 21, *12 2003." However, she fails to brief the issue of the granting of the exception Of no cause of action, again indicating that this assignment of error instead refers to the exception of no cause of action merely as an alternative means of raising the issue of peremption. In view of the appellant's failure to brief this issue, we consider it as abandoned[5]
CONCLUSION
Accordingly, for the reasons stated, we reverse the trial court's judgment granting the exception of peremption and dismissing plaintiff's suit, and we remand the matter to that court for further proceedings consistent with this opinion.[6]
REVERSED AND REMANDED.
ARMSTRONG, C.J., dissents with reasons.
McKAY, J., dissents for the reasons assigned by C.J. ARMSTRONG.
ARMSTRONG, C.J., dissenting.
Because I am convinced that the judgment of the trial court should be affirmed, I respectfully dissent from the majority opinion herein.
This legal malpractice case arose out of Ms. Wong's representation by the defendant attorneys in a domestic relations proceeding, Curole v. Curole, bearing case number 554-553 on the docket of the 24th Judicial District Court. Mr. Curole initiated divorce proceedings against Ms. Wong on June 14, 2000, seeking a judgment of divorce, full custody of the two minor children of the marriage and a temporary restraining order preventing the children's removal from Louisiana.
Ms. Wong engaged Mr. Hoffman in the summer of 2000 to represent her in connection with the aforementioned proceeding. Ms. Wong alleges that she told Mr. Hoffman at that time that she wished to relocate with her children to Ohio, and related incidents of her abuse at the hands of her husband. Mr. Hoffman took photographs of Ms. Wong's bruises, allegedly caused by Mr. Curole. On June 27, 2000, Mr. Hoffman filed an Answer and Reconventional Demand on behalf of Ms. Wong seeking, inter alia, a judgment of divorce, unconditional use of the family home, interim spousal support, child support, joint custody of the two minor children and a temporary restraining order against Mr. Curole's depletion of community assets.
Ms. Wong claims that a Consent Judgment dated October 6, 2000 was obtained as a result of legal malpractice on the part of the attorney defendants, Mr. Hoffman and Ms. Landry, and their law firm. The judgment was made retroactive to June 27, 2000, when Ms. Wong's Answer and Reconventional Demand had been filed. At the time of that consent judgment; October 6, 2000, Ms. Wong knew or should have known that Mr. Hoffman had disregarded her stated desires both to relocate and to give her allegedly abusive husband custody of their minor children.
On October 10, 2000, at Ms. Wong's request, Mr. Hoffman filed a La.R.S. 9:355.4(B)(5) notification of her intent to relocate the children to Ohio. Mr. Curole filed a timely objection, and the matter was heard by the trial court on June 29 and July 31, 2001.
Mr. Curole called Dr. Lynn Parker, a clinical child psychologist, to testify generally concerning the effects of relocation in *13 the context of custody proceedings. Dr. Parker had served previously as a court appointed mediator in the domestic relations proceedings; however, Mr. Hoffman did not object to the testimony on that ground. Mr. Hoffman did raise an objection to Dr. Parker's testimony pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
Based in part on Dr. Parker's testimony, the trial judge denied Ms. Wong's relocation request. Mr. Hoffman appealed, and the Louisiana Court of Appeal, Fifth Circuit, reversed, holding that the trial court's reliance upon Dr. Parker's testimony was manifestly erroneous and constituted an abuse of discretion. Curole v. Curole, 02-153 (La.App. 5 Cir. 6/26/02), 848 So.2d 591, 600, writ granted, 02-1891 (La.7/29/02), 821 So.2d 487, judgment reversed, 02-1891 (La.10/15/02), 828 So.2d 1094. In its opinion, the court of appeal noted that Ms. Wong's counsel "failed to object to Dr. Parker's testimony on the ground that she had served as mediator. Rather, counsel objected that Dr. Parker did not satisfy the Daubert standards to qualify as an expert in this matter." Curole v. Curole, supra at p. 16, 848 So.2d at 599-600. However, upon the Louisiana Supreme Court's grant of Mr. Curole's writ application, the trial court judgment was reinstated. Curole v. Curole, 02-1891 (La.10/15/02), 828 So.2d 1094. The Louisiana Supreme Court held that the trial court may give whatever weight it deems appropriate to the testimony of any and all witnesses, including experts, and that the record revealed that the trial court did not rely exclusively on Dr. Parker's testimony, but based its conclusion on the totality of the circumstances. The Supreme Court affirmed that conclusion.
During the pendency of the foregoing appellate proceedings, Mr. Hoffman's associate, Ms. Landry, advised Ms. Wong that the trial judge had scheduled a hearing on custody, visitation and support issues for February 14, 2002. Ms. Wong claims that she told Ms. Landry she would not be able to attend that hearing, and Ms. Landry allegedly agreed to seek a continuance. Ms. Wong contends that she was not advised that the hearing, in fact, occurred on February 14, 2002, and that Ms. Landry entered into a consent judgment on her behalf concerning custody, support and visitation. Ms. Wong alleges that when she learned of the hearing and consent judgment on February 17, 2002, she immediately contacted Mr. Hoffman and instructed him to withdraw the consent motion. Mr. Hoffman filed a motion to withdraw the judgment on March 5, 2002. Ms. Wong claims that at that time a conflict was created, and that Mr. Hoffman failed to notify her of the purported conflict and failed to advise her to seek independent counsel.
On April 4, 2002, upon Mr. Curole's notice, his counsel took Ms. Wong's deposition, at which Mr. Hoffman appeared as her counsel. Ms. Wong contends that Mr. Hoffman failed to object to deposition questions that she alleges violated attorney-client privilege. Thereafter, Ms. Wong engaged new counsel to represent her in the domestic proceedings, and on May 10, 2002, Mr. Hoffman withdrew at Ms. Wong's request. New counsel advised Ms. Wong that, in his opinion, her representation by. Mr. Hoffman and Ms. Landry fell below the standard of care for attorneys practicing in this community.
On January 31, 2003, following a hearing, the trial court entered judgment upholding the consent judgment dictated into the record by Ms. Landry on February 14, 2002 allegedly without Ms. Wong's consent.
*14 On February 5, 2003, Ms. Wong filed a Petition for Damages, and on July 15, 2003, she filed an Amended Petition for Damages, alleging negligence on the part of the attorney defendants in the following non-exclusive particulars:
(1) improperly advising Ms. Wong to enter into a joint custody agreement when there was a history of family violence and when Ms. Wong had expressed a desire to move her children to Ohio;
(2) failing to object to the testimony of a court-appointed mediator at the hearing on the motion to relocate;
(3) entering into the February 2002 consent judgment without Ms. Wong's authority; and
(4) failing to object and to instruct Ms. Wong to refuse to answer deposition questions that sought privileged information.
It is clear to me upon a careful reading of the record in its entirety that Ms. Wong had actual, constructive and imputed knowledge of all facts giving rise to the alleged legal malpractice when the district court entered its consent judgment of October 6, 2000 and at the latest when the court ruled on August 25, 2001 on her request to modify visitation. However, she did not file suit until February 5, 2003. The acts of malpractice alleged in Ms. Wong's petition all flowed from the engagement of counsel by Ms. Wong to represent her in the custody dispute and were part of counsel's' continuing representation of Ms. Wong.
Ms. Wong claims that the trial court erred in maintaining the defendants' Peremptory Exception of Peremption, contending that La.C.Civ.Pro. art. 927 does not, provide for a peremptory exception of peremption in legal malpractice cases.
The code article provides in pertinent part:
A. The objections which may be raised through the peremptory exception include but are not limited to the following:
(1) Prescription.
(2) Res judicata.
(3) Nonjoinder of a party under Articles 641 and 642.
(4) No cause of action.
(5) No right of action, or no interest in the plaintiff to institute the suit. [Emphasis added.]
According to the Editor's Notes, "The list is illustrative, not restrictive."
Ms. Wong relies on Coffey v. Block, 99-1221 (La.App. 1 Cir. 6/23/00), 762 So.2d 1181. In that case, while the court held that, as a general rule, the peremptory exception of no cause of action is the correct procedural device for raising the issue of peremption, the court declined to hold that every exception raising a peremption claim must be treated as an exception of no cause of action on which no evidence may be taken. The court remanded the case to the trial court for the taking of evidence on the plaintiff's fraud allegation, which could operate as an exception to the peremption rule pursuant to La.R.S. 9:5605 E. Coffey v. Block, supra at p. 9, 762 So.2d at 1187. I note that there are no allegations of fraud in the instant case.
Ms. Wong also relies on International River Center v. Henry C. Beck Company, 95-1396, p. 2 (La.App. 4 Cir. 4/10/96), 672 So.2d 1160, 1161 where this Court held:
At the outset, it should be noted that there is no exception of peremption. See La.C.C.P. art. 927. In Davis v. Sewerage and Water Bd., 469 So.2d 1144 (La.App. 4th Cir.1985) this court held that the proper procedural device for raising the issue of peremption was the exception of no cause of action. Thus, the exception filed by Beck and its sureties *15 should be considered an exception of no cause of action.
Ms. Wong cites Azar-O'Bannon v. Azar, 00-0101 (La.App. 4 Cir. 9/27/00), 770 So.2d 458. In that paternity suit, the peremption provided by La.C.Civ.P. art.2004 was at issue. This Court noted:
Statutes of peremption do not merely bar the remedy, they destroy the cause of action itself. Thus, after the time limit expires the cause of action is lost and no longer exists. The proper procedural device for raising the issue of peremption is an exception of no cause of action rather than prescription [citing International River Center v. Beck, supra. Other citations omitted.]
00-0101, p. 4, 770 So.2d at 461.
In light of the language of Article 927 specifically providing that the listing of the five peremptory exceptions is inclusive but not limiting, and the accompanying Editor's Notes, it appears that peremption should be susceptible of being pled as a peremptory exception. To the same effect, this Court held in Transworld Drilling Co. v. Texas General Resources, Inc., 552 So.2d 454, 456-57 (La.App. 4th Cir. 1989):
At the outset we note that Marmid's exception [of improper use of a demand against a third party] is not among those specifically listed in the Code of Civil Procedure. Our Code is clear that only three types of exceptions are permitted. La.C.C.Pro. Art. 922. The declinatory exception, which declines to the court's jurisdiction, the dilatory exception which retards the progress of the action, but may result in its dismissal, and the peremptory exception which will defeat the action. La.C.C.Pro. Art, 923. However, the specific grounds for exceptions listed under each type are not exclusive. See, La.C.C.Pro. Arts. 925, 926 & 927. Thus, we must determine if there are sufficient legal grounds to dismiss Strata's third party demand prior to trial.
The Court then analyzed whether the third party petition was legally deficient for failure to comply with La.C.Civ.Pro. art. 1111 relative to third party practice.
Similarly, the Louisiana Court of Appeal, Second Circuit, maintained lack of standing as a peremptory exception, finding article 927's listing to be non-exclusive in Commissioner of Agriculture v. Transylvania Flying Service, 493 So.2d 744, 749 (La.App. 2nd Cir.1986):
Among them. [the exceptions filed by defendants-in-reconvention in the trial court] is an exception labeled as the peremptory exception of "Lack of Standing." Although that exception is not specifically listed as a peremptory exception, the listed peremptory exceptions are not exclusive. LSA-C.C.P. Art. 927. We may consider the peremptory exception filed in this court if the ground thereof appears of record. LSA-C.C.P. Art. 2163. Moreover, the captions of pleadings are to be liberally construed. LSA-C.C.P. Art. 865; Jackson v. Housing Authority of New Or leans, 478 So.2d 911 (La.App. 4th Cir. 1985).
The Louisiana Court of Appeal, Third Circuit, held in a legal malpractice case:
An exception of prescription is a peremptory exception that is among those listed in La.Code Civ. P. att. 927. The list is nonexclusive. A peremptory exception may therefore rightfully include an exception of peremption, the effect of which would be to terminate the litigation.
A peremptory exception may be raised at any stage of the proceeding in the trial court prior to the submission of the case for a decision. La.C.Civ.Pro. art. 928(B). Where, as here, a peremptory *16 exception is pled prior to trial, the exception is tried and disposed of in advance of or on the trial of the case. La.C.Civ.Pro. art. 929. When evidence is introduced and evaluated at the trial of the exception, an appellate court must evaluate subject to the traditional rules governing appellate review of facts [citing the manifest error standard of review].

Dauterive Contractors, Inc. v. Landry and Watkins, 01-1112, pp. 7-8 (La.App. 3 Cir. 3/13/02), 811. So.2d 1242, 1248-49.
In Perez v. Trahant, 00-2372 (La.App. 1 Cir. 12/28/01), 806 So.2d 110, a legal malpractice action, the defendant filed an Exception of Prescription, urging that the plaintiff's action was untimely under La. R.S. 9:5605. The trial court held a hearing on the exception at which evidence was taken, and maintained the exception, dismissing the plaintiff's petition. On appeal, the defendant moved to convert his Exception of Prescription to an Exception of No Cause of Action, raising the issue of accrual of the peremptive period. In that case, the court refused to make the conversion, holding:
[O]n the face of Perez's artfully-drafted pleadings, the matter is not clearly untimely. It is only when evidence submitted in conjunction with the peremptory exception asserting the untimely filing of the legal malpractice action is considered that the date of the alleged malpractice is able to be determined. Because [defendant] cannot prevail in recovering the relief he seeksan affirmance of the trial court's judgment dismissing Perez's legal malpractice claimwe decline on appeal, to convert his exception of prescription into a no cause of action exception.
The court then analyzed the application of La. C.C. art. 3460 and La.C.Civ.Pro. art. 927 B and the jurisprudence thereunder and concluded:
Although the no cause of action exception is generally the correct procedural vehicle to assert accrual of the peremptive period, in a case such as this where . . . a party objects to a claim on the basis of the accrual, of the peremptive period, we believe precepts of judicial economy require the matter be treated similarly to an objection of prescription insofar as the receipt of evidence is concerned. Indeed, the jurisprudence has treated the accrual of peremptive periods as exceptions of prescription. [Citations omitted.] Mindful that in Louisiana every pleading shall be construed to do substantial justice, see La.C.C.P. arts. 852 and 865, this court is mandated to render a judgment which is just, legal and proper, see La.C.C.P. art. 2164, and the jurisprudence, in this appeal, we will treat [defendant's] peremptory exception asserting accrual of the peremptive period as an exception of prescription insofar as review of the evidence submitted by the parties is concerned.

Perez v. Trahant at pp. 5-7, 806 So.2d at 115-16.
Because the record reflects that no evidence was taken at the hearing on the Exceptions of Peremption and No Cause of Action, there is no need to rule on whether the trial court correctly denominated the Exception as one of Peremption rather than No Cause of Action.
Ms. Wong also contends that the well-pleaded allegations of her petition do not reveal that her legal malpractice claim is perempted.
The peremption statute, La.R.S. 9:5605, provides in pertinent part:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional *17 corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services, shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. . . . The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any [person or association listed in La.R.S. 9:5605 A], the prescriptive and peremptive period shall be governed exclusively by this Section.
D. The provisions of this Section shall apply to all persons whether Or not infirm or under disability of any kind and including minors and interdicts.
* * *
The Louisiana Supreme Court found that the wording of the statute was clear, and that the peremptive periods of one and three years begin to run at the time of the alleged act of malpractice, rejecting the theory that the time periods do not begin to run until the negligent act or omission "ripens into a viable cause of action sufficient to support a lawsuit." Reeder v. North, 97-0239, pp. 6-7 (La.10/21/97), 701 So.2d 1291, 1295-96. Furthermore, the peremptive periods cannot be suspended during the defendants'"continuing representation" of the plaintiff. Such suspension is prohibited by the language in La. R.S. 9:5605 B and that Section's reference to La.C.C. arts. 3458 and 3461. Id. at pp. 11-12, 701 So.2d at 1297-98.
The petition on its face alleges that the first act of alleged malpractice occurred in the Summer of 2000, when Mr. Hoffman allegedly improperly advised Ms. Wong to enter into the joint custody agreement. Ms. Wong executed the joint custody agreement pursuant to that advice on October 6, 2000, at which time she clearly knew of its terms. She knew or should have known at that time that she was agreeing that her allegedly abusive husband would have joint custody of their children. Applying the statute, it is clear that Ms. Wong was required to file her suit by October 9, 2001.
In Taussig v. Leithead, 96-0960 (La. App. 3 Cir. 2/19/97), 689 So.2d 680, a legal malpractice case, the client claimed twenty separate acts of negligence arising out of her representation in the separation and divorce from her husband. The court held that the limitation period began to run from the first act of negligence, because there was only one tort, that of negligent representation in the separation and divorce action. The court distinguished Bustamente v. Vezina, 95-556 (La.App. 5 Cir. 1/30/96), 668 So.2d 1286, where the attorney represented his client in a redhibition action, in which he failed to record the judgment, and in a later bankruptcy *18 proceeding where he allegedly did not meet the standard of care. Since the underlying factual bases for the two actions differed from each other, and the two cases were separated by a period of 14 years between the end of the redhibition litigation and the commencement of the bankruptcy action, the court held that they constituted two separate torts with two separate limitation periods. In Taussig, as in the instant case, the underlying factual basis is the same, i.e. the alleged negligent representation in the domestic case, and all the alleged acts occurred during a continuous period of representation.
A similar result obtained in Serou v. DeLaup, 2006 WL 3759555 (E.D.La.2006), affirmed, 2007 WL 2258801 (5th Cir.(La.) 8/20/2007), where claims of continuous acts of legal malpractice from July 2003 through August 2004 were held to constitute a single cause of action. See also Parish of Caddo v. Durham, 35,557 (La. App. 2 Cir. 5/8/02), 817 So.2d 1173, in which plaintiff alleged a series of misleading communications, which were held to give rise to a single cause of action as to which prescription ran from the first misleading communication.
The Fifth Circuit reached the same result, citing Taussig, in Gettys v. Sessions and Fishman, L.L.P., 00-1077 (La.App. 5 Cir. 10/31/00), 772 So.2d 874. In that case, the court treated as a single cause of action two acts of malpractice: an error of inserting 490 shares into a voting trust document and the act of correcting the error without the client's knowledge. Since the underlying factual bases of the two acts were the same and the, alleged acts arose out of a continuous period of representation, there was a single cause of action as to which the peremptive period began to run when the first allegedly negligent act was committed.
According to the petition, Mr. Hoffman committed legal malpractice on June 29, 2001 and July 31, 2001, when he failed to object to the testimony of a court-appointed mediator on any other than Daubert grounds at the hearing on Ms. Wong's Motion to Relocate. Initially, I note that as a matter of public record, the Louisiana Supreme Court found that the trial court:
"[D]id not rely exclusively on Dr. Parker's testimony, but based its conclusion on the totality of the circumstances. Additionally, the trial court agreed with some of Dr. Van Beyer's recommendations and articulated specific reasons in those instances where he did not find her reasoning persuasive."
Curole v. Curole, supra at p. 13, 828 So.2d at 1101.
Thus, the Louisiana Supreme Court determined that the trial court's judgment denying Ms. Wong's Motion to Relocate was proper based upon the totality of the circumstances, the lack of the specific objection relied upon by Ms. Wong notwithstanding. That determination is the law of this case. In light of the Louisiana Supreme Court's decision, it is clear that Ms. Wong did not suffer damage as a result of Mr. Hoffman's having objected to Dr. Parker's expertise under Daubert but not based on the psychologist's former status as a court-appointed mediator.
Ms. Wong contends that the trial court erred in striking the Washofsky and Miltenberger affidavits, limiting Mr. Washofsky's testimony to fact evidence, and quashing the notice of Judge Dennis R. Bagneris's deposition.
Ms. Wong sought to introduce evidence at the hearing on the constitutionality of the peremption statute relating to motive(s) of the Louisiana Legislature in enacting La.R.S. 9:5605. The defendants have cited cases from the Louisiana Supreme *19 Court, the United States Supreme Court and from each of the Louisiana Circuit Courts of Appeal in support of the proposition that the constitutional principle of separation of powers prohibits judicial inquiry into the motives of the legislature in enacting a particular statute, in the context of a constitutional attack on that statute.
In State of Arizona v. State of California, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154 (1931), the State of Arizona attacked an act of the Congress effectuating the Boulder Canyon Project, contending that the recital in the Act that its purpose is the improvement of navigation is "a subterfuge and false pretense". Justice Brandeis wrote for the Supreme Court's majority:
Into the motives which induced members of Congress to enact the Boulder Canyon Project Act, this court may not inquire [citations omitted].

State of Arizona v. State of California, at p. 455, 51 S.Ct. at 526.
At Footnote 7, the court notes: "Similarly, no inquiry may be made concerning the motives or wisdom of a state Legislature acting within its proper powers." [Citations omitted.]
The basis for this result is the constitutional principle of separation of powers, See Lujan v. Defenders of Wildlife, 509 U.S. 555, 559-60, 112 S.Ct. 2130, 2135-36, 119 L.Ed.2d 351 (1992), citing, inter alia, Madison's comments in The Federalist No. 48 (James Madison).
In the instant case, Ms. Wong attacks the peremption statute on the ground that although the committee minutes indicate that there was an insurance premium crisis at the time the statute was adopted, in truth and in fact, no such crisis existed. The parties agree that the evidence the trial court excluded, consisting of the affidavits of Messrs. Washofsky and Milten-berger, the testimony of Mr. Washofsky and Judge Bagneris' deposition testimony, related to that issue, and to the motives impelling, the Louisiana. Legislature to adopt La.R.S. 9:5605. The United States Supreme Court's holding precluding inquiry into legislative motivation in this context requires me to conclude that the trial court correctly excluded this testimony.
Ms. Wong also contends that the statute violates her due process rights by denying her access to the courts. Article I, § 22 of the Louisiana Constitution of 1974 provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation or other rights.
The Louisiana Supreme, Court considered whether the one- and three-year limitation provision contained in the Louisiana Medical Malpractice Act violated this constitutional provision in Whitnell v. Silver man, 95-0112, 95-0259 (La.12/6/96), 686 So.2d 23. The Court upheld the provision, noting that the constitutional guarantee of access to courts and a remedy for injury does not warrant a remedy for every single injury. Justice Johnson, writing for the majority, noted:
In Crier v. Whitecloud [496 So.2d 305, 310 (La.1986)], this Court examined the historical background of the Article I, Section 22 of the Louisiana Constitution and concluded that in adopting this constitutional article, the Constitutional Convention did not intend to limit the legislature's ability to restrict causes of action or to bar the Legislature from creating various areas of statutory immunity from suit. The Court further acknowledged that the establishment of *20 statutes of limitations are within the scope of legislative authority, and that enactment of such does not eliminate the remedy for a civil wrong. The Legislature essentially makes a legislative determination that after a certain period of time, no cause of action can arise. Moreover, "[w]here access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery on, any system or classification which is not arbitrary." Crier, (citing Bazley v. Tortorich, 397 So.2d 475 (La.1981)).
686 So.2d at 31.
While the law review commentary critical of the malpractice peremption provision cited by Ms. Wong in her appellate brief may be persuasive, its argument is addressed more properly to the legislature.
Ms. Wong contends that La.R.S. 9:5605 denies her equal protection under both the federal and state constitutions. The inquiry on appeal is as to whether or not the classification created by the statute improperly discriminates against members of that classification.
Article I, § 3 of the Louisiana Constitution of 1974 provides in pertinent part:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, belief, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.
The 14th Amendment to the United States Constitution provides that no State shall deny to any person within its jurisdiction the equal protection of the laws.
In this case, the classification at issue is those persons having malpractice claims against attorneys and legal practices in Louisiana. Ms. Wong acknowledges in her appellate brief that neither strict nor intermediate scrutiny is warranted in this case.[1]
The lowest level of scrutiny applies to laws which classify persons on any basis other than those enumerated in La. Const. Art. I, § 3. Such laws need only be rationally related to a legitimate governmental purpose, and a person attacking the constitutionality of such a classification has the stringent burden of demonstrating that the law does not suitably further any appropriate state interest. Soloco, Inc. v. Dupree, 97-1256, p. 4 (La.1/21/98), 707 So.2d 12, 15.
I note that limitations of one- and three-year have been adopted for licensed professional accountants (La.R.S.9:5604), admitted attorneys and legal practices (La. R.S.9:5605), professional insurance agents (La.R.S.9:5606) and certain health care providers, including physicians, chiropractors, dentists, psychologists, optometrists, midwives, nurses, nursing homes, hospitals, blood centers or tissue banks (La.R.S. 9:5628 and La.R.S. 9:5628.1)[2]. La.R.S. 9:5607 provides for a five-year peremptive period for professional engineers, surveyors, engineer interns, surveyor interns or licensees, professional architects, landscape architects, interns, or agents, or professional interior designers or licensees, or real estate developers relative to development *21 plans certified by a professional engineer or professional architect.
These limitations apply whether claims against these various professionals arise from tort or from contract. While the statutes do not in their texts refer to the governmental purpose to be advanced by their enactment, they appear to be a part of a legislative system that recognizes the unique nature of the professional relationship that exists between these persons and their clients. It also recognizes the character of the professional designation, and the effect of the various licensing and regulatory systems in place within the various professions. I have examined the record in its entirety and find no evidence that would support a finding that La.R.S. 9:5605 is not a part of the legislature's regulatory framework for professionals practicing in this state or does not withstand the minimal scrutiny test applicable under the Louisiana and United States Constitutions.
Ms. Wong also contends that the statute denies her due process under both the federal and state constitutions by eliminating the so-called "continuing representation rule." Mrs. Wong argues that it seems unfair to extinguish a person's claim before he or she realizes the full extent of her damages; however, prescriptive statutes often, if not always, require an injured party to file suit within a reasonable period of having suffered damage, even though the "full extent" thereof may not be immediately quantifiable. I believe that this Court is bound by the Louisiana Supreme Court's decision in the Reeder case, which specifically and emphatically eliminated the continuous representation exception to statutory limitation of actions against attorneys and legal practices as defined in La.R.S. 9:5605.
For the foregoing reasons, I would affirm the judgment of the trial court.
NOTES
[1] Ms. Wong alleged that this advice constituted malpractice in view of Mr. Hoffman's knowledge that Ms. Wang's then husband had been physically abusive to her and that Ms. Wong desired to relocate with her children.
[2] Ms. Wong alleged that when she was initially informed by Ms. Landry, an associate of Mr. Hoffman who was assisting him in the representation of Ms. Wong, that a hearing on child custody, visitation and support issues had been scheduled for February 14, 2002, she had informed Ms. Landry that she would not be able to be in court on that date, and Ms. Landry had agreed to seek a postponement of the hearing. Ms. Wong further alleged that her counsel had never informed her that, due to her husband's opposition to the postponement, the hearing was to held as scheduled. Finally, plaintiff alleged that, unbeknownst to her, Ms. Landry had appeared at the February 14 hearing on behalf of Ms. Wong and had entered into a consent judgment without Ms. Wong's knowledge or authorization.
[3] The defendants moved to strike certain documents that formed part of the legislative history of La. R.S. 9:5606 and two affidavits of third parties regarding the purported intent of the legislature in enacting the statute. The movers argued that the affidavits were inadmissible hearsay, and that the other exhibits were inadmissible because the separation of powers restrictions imposed by the United States and Louisiana Constitutions prohibited the court from re-evaluating information relied upon by the Louisiana Legislature in enacting the statute.
[4] Mr. Hoffman did object to the witness's testimony, albeit solely on the ground that the witness was not qualified under Daubert,
[5] See Rule 2-12.4, Uniform RulesCourts of Appeal.
[6] In view of this disposition, we decline to consider appellant's remaining assignments of error.
[1] Strict scrutiny is limited to classifications based on race or religion; intermediate scrutiny applies only for classifications based on birth, age, sex, culture, physical condition or politics. Progressive Security Ins. Co. v. Foster, 97-2985, p. 17 (La.4/23/98), 711 So.2d 675, 686.
[2] La.R.S. 9:5628 does not use the term "peremption" or "peremptive period", although it applies to "all persons whether or not infirm or under disability of any kind and including minors and interdicts." La.R.S. 9:5628 B.