SANDRA CABRINA JENKINS, Judge.
[ plaintiffs in this action involving allegations of legal malpractice appeal the two judgments of the trial court sustaining attorney, Kim Abramson’s, Exceptions of Peremption, No Right of Action, and No Cause of Action. In response, Abramson has filed Partial Motions to Dismiss and Alternative Peremptory Exceptions of Res Judicata and a Motion to Seal the Record on Appeal. For the reasons discussed herein, Abramson’s partial motions to dismiss the appeal and motion to seal the records are denied, and the judgments of the trial court dismissing the plaintiffs’ claims are affirmed.
PROCEDURAL HISTORY
Kim Abramson was one of several attorneys hired by Panos Tsolainos to represent him in connection with charges of second degree murder, for which he was tried and found guilty.[1] The case was appealed through the state courts and on February 28, 2005, the United States Supreme Court denied Tsolainos’ petition for writ of certiorari.[2] Based on this ruling, Tsolainos had one year, or until February | ⅞28, 2006, to apply for post-conviction relief in federal court.[3] This legal malpractice lawsuit ensued because the attorneys missed this filing deadline.[4] Also named as plaintiffs in this litigation are the Mar-iongoula T. Tsolainos Living Trust, which was set up by Tsolainos’ late mother to pay for his legal expenses, and its Trustees, John Vagelos, Theodore Vagelos, and Citibank, N.A. (hereinafter collectively referred to as the “Trustees”).
The original petition for damages filed on March 21, 2011, alleged that the attorneys were liable in legal malpractice and contract for the following: (1) failing to provide the contracted for legal services; (2) allowing the February 28, 2006 deadline to pass; (3) failing to disclose the missed deadline; (4) undertaking complex post-conviction representation without adequate experience; and (5) misrepresenting the extent of each attorney’s involvement in the case. It also alleged that Tsolainos was forced to request “out of time” federal post-conviction relief as a result of the attorneys’ “defalcations.”
The Trustees’ claims against the attorneys were based on allegations that they made three separate payments for legal fees to Tsolainos and his attorneys on April 10, 2008 and February 27, 2009-ajHer the deadline for seeking post-conviction relief had already expired. They additionally complained that Abramson did not produce a draft application for post-conviction relief, provide any research concerning the federal filing deadlines or law, or provide an itemized accounting for the work being performed.[5]
*642 | -.Abramson responded to the petition by filing exceptions of peremption, no right of action, and no cause of action. Pursuant to the exceptions, Abramson argued that (1) all of the plaintiffs’ claims should be dismissed pursuant to La. R.S. 9:5605 because the petition was filed more than three years after the attorneys missed the February 28, 2006 deadline, and (2) the Trustees were not proper parties to the litigation because there was no attorney-client relationship between the Trustees and Abramson. At the hearing on the exceptions, the plaintiffs requested leave to amend their petition in order to more clearly assert claims based on unjust enrichment and claims that the attorneys charged for work that was never performed in the case. They filed the amended petition while the exceptions were still under the advisement.
In the amended petition, the Trustees alternatively argued that Abramson was unjustly enriched at the expense of the trust “by virtue of having failed to perform services which would justify the funds received and/or by continuing to request funds for services after her own actions made those services impossible to properly complete.” The amended petition also stated that Abramson “failed to provide the services she said she would, overcharged for services actually provided in violation of Rule of Professional Conduct 1.5(a) and refused to account to the Trust ... or, alternatively, allow Tsolainos to approve itemized billings ... through the Trustees.”

\4First Trial Court Ruling on Exceptions (October 18, 2011)

On October 18, 2011, the trial court rendered its judgment granting Abramson’s Exception of Peremption, No Cause of Action and No Right of Action. The judgment also granted the plaintiffs thirty days in which to amend their petition to state a cause of action. In its Reasons for Judgment, the trial court stated:
This malpractice action was filed on March 24, 2011, which is more than five years after the error or omission alleged by the plaintiffs. This action is per-empted by La. R.S. 9:5605.
Further, neither the Trust nor the Trustee has any right nor have they stated any viable claim against Mrs. Abramson. However, this Court must allow the petitioners one opportunity to amend their petition.
The trial court did not certify this judgment as a final judgment and there was no language explicitly dismissing any of the claims with or without prejudice. Two days later, the trial court signed plaintiffs’ amended petition.

Motion to Clarify

On October 27, 2011, the plaintiffs filed a “Motion for New Trial/Motion to Clarify” the trial court’s October 18, 2011 Judgment. The motion complained that the trial court failed to refer to the amended petition or clarify whether it encompassed the amended petition. In response, on October 28, 2011, the trial court entered an order clarifying its judgment and stating:
This Court based its Judgment and Reasons solely on the original Petition. It has NOT considered any claim for unjust enrichment.[6]
*643 | .¡Second Trial Court Ruling on Exceptions (February 13, 2012)
On November 10, 2011, Abramson re-urged the exceptions of no cause and no right of action, asserting that the case should be dismissed on the grounds that the petition, as amended, failed to state a cause of action on behalf of the Trustees because their unjust enrichment claims still sought the return of attorneys’ fees. Abramson argued that the plaintiffs could not circumvent the law by substituting the Trustees as surrogate plaintiffs for Tsolai-nos, the proper plaintiff, whose legal malpractice claims had already been dismissed as untimely. A hearing was held on the exception of no cause of action. On February 13, 2012,[7] the trial court granted Abramson’s exceptions of no cause of action and no right of action, and dismissed the plaintiffs’ claims with prejudice. The trial court’s reasons for judgment stated:
One cannot use the theory of unjust enrichment to revive a claim that has already been prescribed or been [per-empted].
This appeal was lodged within 60 days of the February 13, 2013 Judgment, on April 12, 2013. On appeal, the plaintiffs argue that the trial court erred in dismissing their claims based on the exceptions. In opposition, Abramson reasserted the claims made in her exceptions before the trial court. She also filed motions to dismiss the appeal and to seal the record on appeal.
DISCUSSION

Partial Motion to Dismiss Appeal

A threshold issue before us on appeal is whether or not the plaintiffs have timely appealed the October 18, 2011 judgment of the trial court. Abramson argues that because any and all of the plaintiffs’ legal malpractice claims were 1 fidismissed pursuant to the October judgment, the plaintiffs had 60 days from the trial court’s entry of a final judgment — or until April 13, 2012 — to appeal any and all claims sounding in legal malpractice. For the reasons discussed below, Abramson’s motions to dismiss are denied.
Louisiana Code of Civil Procedure article 2083 outlines the general law regarding appealable matters; it provides that an appeal may be taken from both final judgments and interlocutory judgments when allowed by law. Article 1841 defines both final and interlocutory judgments. It states that a judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment, while a judgment that determines the merits in whole or in part is a final judgment. La. C.C.P. art. 1841.
Louisiana Code of Civil Procedure Article 1915 states:
When a court renders a partial judgment ... or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories ..., the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court
[[Image here]]
In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of less than all of the parties shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal.
La. C.C.P. art. 1915(B).
Based on the plain language of Article 1915, we find that the trial court’s October *644 2011 judgment was a partial judgment. First, it did not dispose of all of the claims in the lawsuit. Although the trial court’s judgment stated that Abramson’s exceptions of peremption, no right of action, and no cause of action were granted, the judgment also stated that the court would allow the plaintiffs to amend their petition to state a cause of action. Spencer v. Burglass, 288 So.2d 68, 69 (La.App. 4 Cir.1974); Imperial Trading Co. v. Rouse, 194 So.2d 417, 419 (La.App. 4 Cir.1967). Thus, the judgment did not dispose of all of the claims and rights of the parties and was not appealable. Second, the judgment was never designated as a final, appealable judgment by the trial court as required by La. C.C.P. art. 1915(B).
In addition, we find that the trial court did not err in allowing the plaintiffs to amend their petition because during oral argument, plaintiffs raised issues related to overbilling, unjust enrichment, and the existence of separate and distinct acts of malpractice not barred by peremption. Louisiana Code of Civil Procedure Article 934 states, “When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court” (Emphasis added). In addition, the Louisiana Supreme Court declared that in situations “where the plaintiff has raised allegations in argument which might be sufficient to overcome a peremptory exception of prescription, he should be allowed time to amend his petition to assert such allegations, even though the claim asserted in the original petition is prescribed on its face.” Whitnell v. Menville, 540 So.2d 304, 309 (La.1989). According to the Court, “[t]his rule recognizes this state’s liberal approach toward allowing amended pleadings, and promotes the interests of justice.” Id.[8]
For the reasons expressed above, we find that the October 18, 2011 judgment was not a final, appealable judgment; the plaintiffs were properly ^afforded an opportunity to amend; and the lawsuit filed on April 12, 2013 was timely as to any and all claims extinguished by the trial court’s October 18, 2011 ruling. Accordingly, Abramson’s Partial Motions to Dismiss and Alternative Peremptory Exceptions of Res Judicata are denied.

Motion to Seal Record

The second threshold matter before us on appeal is Abramson’s motion to seal the appellate record. In the motion, Abramson advises that the trial court sealed the record based on the unopposed motion to seal filed by the plaintiffs. No further reasoning is given in support of the defendant’s motion to seal.
Our review of the trial court record reveals that the plaintiffs filed a motion to seal the record of the trial court the day after the petition for damages was filed. The motion stated:
Petitioners respectfully request that the above entitled matter be sealed for 30 days from the filing of the Petition so that possible resolution of the case may be explored. No defendants in the matter have an objection to the sealing of the record.
The same day, the trial court signed the order providing “that any reference to the suit caption and the suit indices be omitted for thirty days.” Although this Court has *645 reviewed the record and found no additional motions or orders to seal the record beyond the initial thirty day period, filings in the trial court continued to be marked as “sealed” after that period expired.
The Louisiana Supreme Court directly addressed the rights of litigants to have court records sealed in Copeland v. Copeland, 06-1023 (La.6/2/06), 930 So.2d 940 (“Copeland I”) and Copeland v. Copeland, 07-0177 (La.10/16/07), 966 So.2d 1040 (“Copeland II”), which involved the high profile divorce proceedings of restaurant mogul, Alvin Copeland. Although the parties jointly requested that the records be sealed, the Times-Picayune newspaper intervened, seeking access to the records. In limiting the circumstances under which parties could have records sealed and protected from public access, the Louisiana Supreme Court considered the United States Supreme Court precedent holding that trials are public events; that what transpires in a courtroom is public property; and that the public has a right to inspect and copy public court records. Copeland II, 07-0177 at p. 3, 966 So.2d at 1042-43.[9] The Court additionally pointed out that the Louisiana Constitution provides that “[a]ll courts shall be open” and “[n]o person shall be denied the right to observe the deliberations of public bodies and examine public records, except in cases established by law.” See La. Const, art. I, § 22 and art. XII, § 3 (emphasis omitted). At the same time, the Court recognized that not all records need necessarily be accessible to the public. Rather, discretion regarding access to sensitive information can be left to the sound discretion of the trial court, which has the general authority to seal all or part of a record when appropriate. Copeland II, 07-0177 at p. 6, 966 So.2d at 1044-45.[10]
The Court ultimately concluded that weighing the right of public access against the parties’ privacy rights requires that a balancing test be employed. Under the balancing test, motions to seal are left to the trial court’s discretion. At the same time, the burden of proof is placed on the parties seeking concealment. | inThe test balances “the parties privacy interests against the public’s constitutional rights of access to court proceedings and documents.” Copeland II, 07-0177 at p. 10, 966 So.2d at 1047. The Court explained:
Although there may be some justification for sealing certain sensitive evidence in a proceeding, the parties have the burden of making a specific showing that their privacy interests outweigh the public’s constitutional right of access to the record. The trial court, should it grant such relief, must ensure that its order is narrowly tailored to canee the least interference possible with the right of public access.
Copeland II, 07-0177 at p. 10, 966 So.2d at 1047 (emphasis added).
In the present case, although the plaintiffs filed a motion requesting that the record be sealed for a limited period of thirty days, the seal remained active in the case throughout the duration of the trial court proceedings. Not only did this have the effect of extending the concealment of the records beyond 30-days authorized by the trial court, it also allowed the parties to avoid satisfying their burden of proving that the request was not overly broad. Because the court’s ultimate action in sealing the entire record exceeded the scope of *646 the parties’ original motion to seal and the order issued by the court, this action was not “narrowly tailored to cause the least interference possible with the right of public access” as required by law. Copeland II, 07-0177 at p. 10, 966 So.2d at 1047.
Based on the foregoing, Abram-son’s motion to seal the record of appeal is denied. The trial court did not conduct a hearing on the matter and there is nothing in the record before us to indicate that the parties satisfied their burden of proving the existence of private and sensitive information which would outweigh the public’s constitutional right of access to the records in this proceeding. Mere allegations of attorney malpractice or misconduct do not, without more, warrant protection from public disclosure. See also In re Lee, 12-0862 (La.6/15/12), 90 So.3d 1030 (wherein the Supreme Court vacated a blanket order to seal records regarding attorney disciplinary proceeding, and instead limited the protective order to sensitive information contained in the underlying domestic case).

Legal Malpractice and Peremption

Also at issue before us on appeal is whether or not the trial court erred in dismissing all of the plaintiffs’ legal malpractice claims as perempted. Pursuant to Louisiana Revised Statute 9:5605, plaintiffs must file their legal malpractice claims within one year from their attorney’s negligent act or omission, or one year from the date that the malpractice was discovered. Moreover, regardless of the date of discovery, the claim must be filed within three years of the alleged acts of malpractice. Both the one-year and three-year periods of limitations are, by statute, characterized as peremptive in nature “within the meaning of Civil Code Article 3458 and in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.” La. R.S. 9:5605(B). As stated in Article 3458, “[pjeremption is a period of time fixed by law for the existence of a right.” La. C.C. art. 3458. Therefore, unless timely exercised, the right is extinguished upon the expiration of the peremptive period. Id,.
In an attempt to avoid the harsh consequences of peremption, the plaintiffs argue that Abramson committed four separate acts of malpractice for which different per-emption periods should apply. In so doing, the plaintiffs rely on this court’s decision in Wong v. Hoffman, 05-1483 (La.App. 4 Cir. 11/7/07), 973 So.2d 4, wherein we held that in cases where a plaintiff has alleged on the face of the petition that their attorney committed distinct acts of legal malpractice which occurred on different dates, “each separate act of malpractice must be considered | i2to be a separate cause of action with its own one-year and three-year peremptive period.” Wong, 05-1483 at p. 10, 973 So.2d at 10. In considering whether or not this Court’s ruling in Wong applies to the facts of the case before us, we look to Louisiana Supreme Court jurisprudence for guidance.
The Louisiana Supreme Court recognized the harsh consequences and “perceived inequities” that might flow from the classification of La. R.S. 9:5605’s deadlines as peremptive in the landmark case, Reeder v. North, 97-0239, p. 9 (La.10/2/97), 701 So.2d 1291, 1295-96. At issue before the Court was whether or not the three-year deadline for a legal malpractice claim could be suspended while the attorney-client relationship was still in existence and the attorney was actively attempting to remedy the alleged malpractice. Reeder, 97-0239 at pp. 5-6, 701 So.2d at 1295. Prior jurisprudence held that prescription was suspended during an attorney’s “ ‘continuous representation of a client regarding the specific subject matter in which the *647 alleged wrongful act or omission occurred.’” Reeder, 97-0239 at p. 11, 701 So.2d at 1297 (Emphasis added).[11] However, because Article 5605, expressly characterized the deadlines as peremptive, the Court found that the “continuous representation” rule could no longer apply. Reeder, 97-0239 at p. 12, 701 So.2d at 1298.
Addressing the clear wording of the statute and the authority of the Legislature to designate deadlines as peremptive, the Court stated, “While the terms of the legal malpractice statute of limitations statute may seem unfair in that a person’s claim may be extinguished before he realizes the full extent of his damages, the enactment of such a statute of limitations is exclusively a legislative | ^prerogative.” Reeder, 97-0239 at p. 9, 701 So.2d at 1296. It further reasoned: “The Legislature was aware of the pitfalls in [La. R.S. 9:5605] but decided, within its prerogative, to a three-year absolute limit on a person’s right to sue for legal malpractice, just as it would be within its prerogative to not allow legal malpractice claims at all.” Reeder, 97-0239 at p. 9, 701 So.2d at 1297.
The Supreme Court revisited the legal malpractice peremption statute more recently in Jenkins v. Starns, 11-1170 (La.01/24/12), 85 So.3d 612. In Jenkins, a client sued her attorney in legal malpractice for allowing a default judgment to be taken against her. After the client notified the attorney that she had been served with the default judgment, the attorney unsuccessfully attempted to have the judgment annulled. The client testified that she did not realize that things had seriously gone wrong until two years later when her check started being garnished; it was at that time that she filed her legal malpractice lawsuit. Jenkins, 11-1170 at p. 6, 85 So.2d at 616. The Supreme Court found that her lawsuit filed nearly two years after she was served with notice of the default was untimely because despite the harsh consequences, the continuous representation rule could not apply to suspend the one-year peremption set forth in La. R.S. 9:5605. Jenkins, 11-1170 at p. 20, 85 So.3d at 624.
The facts in Wong were distinguishable from the facts is Reeder based upon the nature of the attorney’s actions following the initial act of malpractice. Of significance, in Reeder, and more recently in Jenkins, there was evidence to show that the clients knew or should have known of the attorney’s initial act of malpractice, yet continued to allow the attorney to represent them, which resulted |14in failed attempts to remedy the initial negligent act or omission. More importantly, during the period of the attorney’s “continuous representation,” there was no evidence that the attorneys had committed separate and distinct acts of malpractice unrelated to the prior malpractice.[12]
To the contrary, in Wong, we found that the plaintiff had alleged four separate acts of malpractice wholly unrelated to the initial act of malpractice. Ms. Wong alleged that her divorce attorneys committed the following acts: (1) erroneously advised her to agree to joint custody, (2) failed to object to certain expert testimony, (3) agreed to a consent judgment without her knowledge or consent, and (4) failed to *648 object to deposition testimony eliciting attorney-client privileged information. Under those circumstances, we rejected the defendants’ argument that the alleged acts of malpractice had to be treated as a single act for the entire duration of the law firm’s representation under the continuing representation rule. Wong, 05-1483 at p. 8, 973 So.2d at 7. We explained that to accept the defendant’s argument would be to force a client to initiate a claim against them attorney the first time they believed the attorney acted in a way that could be interpreted as negligence. Wong, 05-1483 at p. 10, 973 So.2d at 10. “Such a rule would negate the right of a client who believes his counsel has been negligent to forgive one or more potential or arguable acts of malpractice, but then decide to file suit later when the attorney does something more egregious that the client is not willing to forgive.” Id.
11fiThe plaintiffs ax-gue in the case before us that Abramson’s initial malpractice was missing the fedei'al filing deadline. They claim that she committed subsequent acts of legal malpractice on or about April 10, 2008 and February 27, 2009, when she billed and was compensated for work on the habeas petition that was not actually performed and that was already overdue.[13] According to the plaintiffs, because these independent breaches of contract occurred within the three years befoi'e the lawsuit was filed on March 21, 2011, these claims are not barred by the three-year pei'emp-tive period under La. R.S. 9:5605.
We find that the allegations of wrongful billing alleged by the plaintiffs do not amount to separate acts of malpractice to which different peremption periods would apply. Rather, as in Reeder and Jenkins, the allegations of wrong-doing are inextricably tied to Abramson’s original act of alleged malpi'actice — ie., missing the federal filing deadline. To hold otherwise would mean that an attorney would be subject to a new legal malpractice claim with a new peremptive period each time the attorney billed a client for work perforated after committing an act which could be deemed malpractice. This is clearly not the intent of the law.[14]
Finally, out of an abundance of caution, we also note that the plaintiffs’ allegations did not rise to the level of fraud, which would make the three-year 11fiperemptive period inapplicable under La. R.S. 9:5605(E). Thus, to the extent that the trial court rejected the plaintiffs’ arguments or insinuations that Abramson intentionally charged Tsolainos for federal post-conviction relief work that was not done, that determination was not in error. Fraud is defined as “a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage for one party or to cause a loss or inconvenience to the other” and it may *649 result from silence or inaction. La. C.C. art. 1953. It is well-settled that allegations of fraud must be pled with particularity. La. C.C.P. art. 856. While the plaintiffs argue that Abramson charged for work that was not done, the allegations in their petition do not rise to the level of specificity required by Louisiana law to allege fraud. The plaintiffs allege, for instance, that they were harmed as a result of Abramson’s “defalcations.” However, the Louisiana Supreme Court has held that although the term defalcation, “as ordinarily understood, implies some bad faith or misconduct,” it “must be given a meaning different from fraud, embezzlement or misappropriation, and that the word does not necessarily imply dishonesty or fraud.” Emery & Kaufman v. Heyl, 227 La. 616, 80 So.2d 95, 99 (1954). Moreover, even if Abramson had known that she missed the deadline and continued to work and seek “out of time” federal post-conviction relief without advising Ms. Tsolainos of her error, her conduct would not have risen to the level of fraud under Louisiana law. See Smart v. Vazquez, 02-1694, p. 8 (La.App. 4 Cir. 6/12/13), 119 So.3d 901.
Based on the foregoing, the trials court’s judgment dismissing the plaintiffs’ claims based on peremption is affirmed.

117Exceptions of No Cause and No Right of Action

Two alternative arguments are raised on behalf of the Trustees on appeal. First, they argue that they have claims based on legal malpractice that are not barred by peremption. In the alternative, they argue that if they do not have claims based on malpractice, they have claims based on the theory of unjust enrichment that are subject to a ten-year prescription period and are therefore not prescribed. For the reasons addressed more fully below, we find that the Trustees can assert no viable claim against Abramson based on either theory. There was no attorney-client relationship between the Trustees and Abramson that would allow them to sue her based on legal malpractice.[15] In addition, they could not use unjust enrichment as a substitute means of asserting what would otherwise be a legal malpractice claim, which can be brought only by a client against his or her attorney.
Given the trial court granted Abramson’s exception of no cause of action, we begin our analysis by assuming the factual allegations in the plaintiffs’ petition for damages to be true. Fink v. Bryant, 01-0987, p. 3 (La.11/29/01), 801 So.2d 346, 348. Our task is to determine whether, based on the face of the petition, the Trustees are entitled to the relief sought. Id.
We observe, on de novo review,[16] that all of the allegations asserted by the Trustees against Abramson stem from the contractual relationship between 11RAbramson and Tsolainos. There was no contractual relationship between Abram-son and the Trustees that would confer upon them a right to assert a legal malpractice claim. In order to establish a claim for legal malpractice, a plaintiff must prove: 1) a duty arising from an attorney-client relationship; 2) breach of this duty by failure to exercise a reasonable degree *650 of skill in counseling or representing a client; and 3) damages or loss arising out of the breach. Teague v. St. Paul Fire and Marine Ins. Co., 07-1384, p. 8 (La.2/1/08) 974 So.2d 1266, 1272. The first requirement is missing in this case. There was no duty arising from an attorney-client relationship because Ms. Abramson did not represent the trust or its Trustees.
Moreover, the circumstances under which a plaintiff can establish a cause of action against an attorney representing another party are very limited. In Penalber v. Blount, 550 So.2d 577 (La.1989), for instance, the Louisiana Supreme Court held that an attorney may be held liable to a non-client for intentional tortious conduct; however, no cause of action could lie in favor of a non-client based on theories of negligence or malpractice because an attorney owes no duty to his client’s adversary. In the present case, the relationship between Tsolainos and the Trustees was clearly adversarial in nature. In fact, in the memorandum supporting her exceptions, Abramson admits that she helped Tsolainos locate an attorney to represent him in an action against the Trustees. Litigation is, by definition, adversarial in nature.
In addition, legal malpractice claims are not assignable. In Taylor v. Babin, 08-2063 (La.App. 1 Cir. 5/8/09), 13 So.3d 633, the First Circuit Court of Appeal examined the res novo issue of whether or not legal malpractice claims could be hnassigned to third parties pursuant to Louisiana Civil Code Article 2642, governing rights which may be assigned, and Article 2044, governing insolvency by failure to exercise a right. After reviewing state and federal cases from various other jurisdictions, the Court, “persuaded by the reasoning of the federal courts and the majority of our sister states”, held that legal malpractice claims are not assignable. The Court concluded that “[t]he mere threat of a malpractice claim being assigned would be detrimental to an attorney’s duty of loyalty and confidentiality to his client, would promote collusion, and would increase a lawyer’s reluctance to represent an underinsured or insolvent client.” Taylor, 08-2063 at p. 14, 13 So.3d at 642.
Finally, we are aware of no case law in Louisiana which would allow a third-party who has taken on the obligation of paying attorneys’ fees for a client to step in and sue the attorney based on allegations of malpractice. In fact, this Court addressed an almost identical situation in Seals v. DeBose-Parent, 12-0437 (La.App. 4 Cir. 8/5/12), 99 So.3d 72. In Seals, a criminal defendant’s brother had consulted with, hired, and paid an attorney to represent her in connection with murder charges. After the attorney withdrew from the case, the brother not only filed a complaint with the Louisiana Disciplinary Board, but also filed suit in district court alleging legal malpractice, misrepresentation, deceptive business practices, negligent intentional affliction of mental and emotional distress, violation of the professional rules of conduct, attempted extortion, and failure to perform contracted for services. Seals, 12-0437 at p. 2, 99 So.3d at 73. The sole issue on appeal was whether the brother, who had retained and paid the attorney on behalf of his sister, could pursue a claim for legal malpractice as a non-client. We 120held that he could not. Not only were there no facts to indicate the existence of an attorney-client relationship between the brother and the attorney, there was nothing to indicate that the brother believed he was hiring the attorney on his own behalf. As a result, we found that the trial court did not err in dismissing the case on the grounds that there was no attorney-client relationship between the parties, despite *651 the alternative theories of liability asserted by the brother.
In the alternative, the plaintiffs ask this Court to find that Abramson is liable to the Trustees based on the theory of unjust enrichment. Claims for unjust enrichment are governed by Louisiana Civil Code Article 2298, which states:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term “without cause” is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
La. C.C. art. 2298. The plaintiffs have also asked this Court to apply this Court’s rationale in Dugas v. Thompson, 11-0178 (La. App 4 Cir. 6/29/11), 71 [71] So.3d 1059 in support of maintaining their cause of action against Abramson. As stated in Dugas, we look to five elements to determine whether or not a plaintiff has established a claim based on unjust enrichment. The elements are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of “justification” or “cause” for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff. Dugas, 11-0178 at p. 13, 71 So.3d at 1067-68.[17]
In Dugas, the property owner attempted to sue a demolition company hired by the city on the grounds that the demolition company improperly removed building materials from the site. The demolition company, however, was dismissed on an exception of prescription because it was not named as a defendant until more than a year after the demolition work was performed. On appeal, the plaintiff argued that his claim against the demolition company was timely because it was based on the theory of unjust enrichment, which is subject to a ten-year prescriptive period. Based on the five elements listed above, we found that the plaintiff could not state a claim based on unjust enrichment because an alternative theory of recovery was available to the plaintiff. Dugas, 11-0178 at p. 14, 71 So.3d at 1068; Mouton v. State, 525 So.2d 1136, 1142 (La.App. 1 Cir.1988). In particular, the plaintiff had a cause of action in tort based on conversion. We reasoned:
It is “of no moment that plaintiffs tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment.” MedSouth Record Management, [LLC, 10-0352, pp. 2-3 (La.6/4/10), 38 So.3d 241, 242] (citing Jim Walter Homes v. Jessen, 98-1685, p. 13 (La.App. 3 Cir. 3/31/99), 732 So.2d 699, 706). Stated otherwise, “[t]o find that [the plaintiff] ... now has no other remedy and to provide it one under unjust enrichment would be tantamount to allowing any plaintiff who let his cause of action prescribe ... to recover under an enrichment theory.” Jessen, 98-1685 at p. 13, 732 So.2d at 706.
Dugas, 11-0178 at p. 14, 71 So.3d at 1068.
Contrary to the plaintiffs’ contentions, we find the facts as alleged by the plaintiffs in this case are no different from the facts in Dugas. Like the plaintiff in Dugas, the Trustees do have another remedy *652 available to them by law. Their remedy was to sue Tsolainos to recover the sums that they allege were erroneously reimbursed to cover his legal expenses. The mere fact that a party does not have 122privity to sue an attorney for legal malpractice does not confer upon them a right to seek damages based on unjust enrichment. See e.g., Seals, supra.
By amending their petition to assert claims of unjust enrichment against Abramson on behalf of the Trustees, the plaintiffs were attempting to avoid the ramifications of peremption under La. R.S. 9:5605 by substituting a third party to assert a claim of legal malpractice on Tso-lainos’ behalf. That is not allowed. As a result, we find that the trial court did not err in granting Abramson’s exceptions of no right of action and no cause of action based upon a finding that “[o]ne cannot use the theory of unjust enrichment to revive a claim that has already been prescribed or been [perempted].”
Because we find that the Trustees could assert no cause of action against Abramson based on malpractice or a theory of unjust enrichment, it follows that they have no right of action. Accordingly, the trial court’s judgments dismissing the Trustees’ claims are affirmed.
DECREE
For the reasons addressed herein, the Motions to Dismiss and Alternative Peremptory Exceptions of Res Judicata, and Motion to Seal the Appellate Court Record filed by the defendant, Kim Abramson, are DENIED. The trial eoui't’s judgments dated October 18, 2011 and February 13, 2012, dismissing all of the claims of the plaintiffs, Panos Tsolainos, Mariongoula T. Tsolainos Living Trust, and its Trustees, John Vagelos, Theodore Vagelos, and Citibank, N.A. pursuant to exceptions of per-emption, no cause of action, and no right of action are AFFIRMED.
^AFFIRMED; MOTION TO DISMISS AND MOTION TO SEAL DENIED

. State of Louisiana v. Panos Tsolainos, No. 290-874, Division "H," Twenty-Second Judicial Court for Tangipahoa Parish, State of Louisiana.

. State v. Tsolainos, 00-1664 (La.App. 1 Cir. 12/31/03), 864 So.2d 905; State v. Tsolainos, 04-0616 (La.7/2/04), 877 So.2d 144; and Tsolainos v. Louisiana, 543 U.S. 1186, 125 S.Ct. 1395, 161 L.Ed.2d 189 (2005).

. Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2241 etseq.

. The other attorneys named as defendants in this litigation have settled.

. Abramson argues as a defense that the plaintiffs never explicitly allege that Abram-son is liable to Tsolainos. Instead, the petition only avers that Abramson is liable to the trust, and the other attorneys are liable to Tsolainos. Nevertheless, because the allegations throughout their petition clearly arise from transactions and occurrences between Abramson and Tsolainos, we find that the petition sufficiently alleges claims by Tsolai-nos against Abramson. A party may be grant *642 ed any relief to which he is entitled so long as the facts pled give the opposing party adequate notice of the existence of potential causes of action. Cox v. W.M. Heroman and Co., 298 So.2d 848 (La.1974), overruled on other grounds by A. Copeland Enterprises, Inc. v. Slidell Memorial Hosp., 94-2011, p. 9 (La.6/30/95), 657 So.2d 1292, 1299.

. The court did not issue a ruling specific to the alternatively filed motion for new trial.

. The court postponed the hearing on the exception of no right of action due to an ongoing discovery dispute, noting that its ruling on the exception of no cause of action might render the exception of no right of action moot.

. See also Wyman v. Dupepe Construction, 09-0817 (La.12/1/09), 24 So.3d 848, 849 (per curiam); Reeder v. North, 97-0239, p. 14 (La.10/21/97), 701 So.2d 1291, 1299; Chapital v. Guaranty Sav. & Homestead Ass'n, 96-0244, pp. 4-5 (La.App. 4 Cir. 10/2/96), 681 So.2d 1307, 1310; Whitnell v. Menville, 540 So.2d 304, 309 (La.1989).

. See Craig v. Harney, 331 U.S. 367, 374, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947); Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

. See also Bester v. Louisiana Supreme Court Committee on Bar Admissions, 00-1360, pp. 12-13 (La.2/21/01), 779 So.2d 715, 721.

. Citing Lima v. Schmidt, 595 So.2d 624, 630 (La.1992) and Braud v. New England Ins. Co., 576 So.2d 466, 468 (La.1991).

. See also Gettys v. Fishman, 00-1077, p. 5 (La.App. 5 Cir. 10/31/00), 772 So.2d 874, 877 (wherein the Fifth Circuit held that an attorney’s act of inserting wrong information into contract, and then correcting it without the parties’ knowledge were not two separate acts to which two different prescriptive periods would apply);

. In their petitions of damages, plaintiffs allege that Abramson’s liability stems from her failure to provide contracted for legal services; for being inexperienced; for not disclosing the missed deadline prior to collecting payment; for not producing work related to the federal application for post-conviction relief; for failing "to perform services which would justify the funds received;” and/or because "her own actions made those services impossible to properly complete” in violation of Rule of Professional Conduct 1.5(a).

. In Wong, although the acts were each committed during the same child custody litigation, they were alleged to have occurred on different dates and related to entirely different matters, including a joint custody agreement, expert testimony, a consent decree, and deposition testimony. Cf., Dauterive Contractors, Inc. v. Landry and Watkins, 01-1112 (La.App. 3 Cir. 3/13/02), 811 So.2d 1242 (holding that law firm's breach of the professional rules of conduct while trying to remedy act of missing a filing deadline did not constitute a separate act of malpractice).

. Even if the Trustees could assert a claim based on legal malpractice, their claims would be perempted for the same reasons as Tsolainos’. However, because the Trustees' claims for malpractice and claims for unjust enrichment overlap, we address them in conjunction with each other.

. We review the trial court’s ruling on an exception of no cause of action de novo. Friel v. Louisiana Citizens Property Ins. Corp., 11-1032, p. 4 (La.App. 4 Cir. 2/8/12), 85 So.3d 180, 183.

. See also JCD Marketing Co. v. Bass Hotels and Resorts, Inc., 01-1096, p. 13 (La.App. 4 Cir. 3/6/02), 812 So.2d 834, 842; Baker v. Maclay Properties Co., 94-1529, p. 18 (La.1/17/95), 648 So.2d 888, 897.