SANDRA CABRINA JENKINS, Judge.
_JjThis appeal and the consolidated writ arise out of a personal injury suit. Plaintiff, Huey Madison, filed suit against Inter-Continental Hotels Corporation and Panacon Partnership (“Inter-Continental”) and Carolina Door Controls, Inc., d/b/a Alabama Door Systems and/or Automatic Access (“Carolina Door”), for alleged injuries sustained from the operation of an automatic revolving door located upon the premises of Inter-Continental. Plaintiff and Inter-Continental now appeal the trial court’s April 23, 2014 judgment granting summary judgment in favor of Carolina Door. In the consolidated writ,[1] Carolina Door seeks review of the trial court’s June 8, 2014 judgment denying its motion to strike Plaintiffs expert affidavit that was submitted in opposition to the motion for summary judgment.
Upon our de novo review of the trial court’s judgment granting the motion for summary judgment, we find genuine issues of material fact that preclude summary judgment in favor of Carolina Door and we reverse the trial court’s April 23, 2014 judgment and remand the matter for further proceedings. Upon review of |¡>the trial court’s denial of the motion to strike the expert affidavit, we find no abuse of discretion and deny the writ.
PACTS AND PROCEDURAL HISTORY
On January 9, 2004, Plaintiff was work-' ing as a courier in downtown New Orleans. In the course of making deliveries, Plaintiff walked through the Inter-Continental Hotel. As he exited the hotel through its automatic revolving door, Plaintiff alleges that the door panels stopped revolving, collapsed together, and pinned Plaintiff between two door panels. Subsequently, Plaintiff filed suit against Inter-Continental alleging injuries from the incident on January 9, 2004, and claiming damages as a result of Inter-Continental’s negligence in creating a hazardous condition, failing to warn of known defects, and failing to properly install, maintain, inspect, monitor, and repair the revolving door.
Inter-Continental answered Plaintiffs suit and denied all claims of negligence. Inter-Continental also asserted a third-party demand against Carolina Door, the company which supplied, installed, and serviced the revolving door at issue. Inter-Continental alleged that Carolina Door had exclusive control over the inspection, maintenance, and repairs of the revolving door. Inter-Continental asserted that any damages caused to Plaintiff resulted solely from Carolina Door’s various acts of negligence, including failure to properly install, inspect, maintain, and repair the revolving door. After Inter-Continental asserted this third party demand, Plaintiff filed an amended petition naming Carolina Door as a direct defendant in his suit.
|,Jn June 2013, Carolina Door filed a motion for summary judgment seeking dismissal of Plaintiffs claims. Carolina Door argued Plaintiff could not produce any factual support for his negligence claims against it and as a matter of law Carolina Door was entitled to summary judgment dismissing all of Plaintiffs claims against it. Plaintiff filed an opposition to Carolina Door’s motion for summary judgment but Plaintiff did not submit any affidavits or exhibits in support of his opposition.
Prior to a hearing on Carolina Door’s motion for summary judgment, Inter-Con *1249 tinental filed its own motion for summary judgment seeking dismissal of Plaintiffs claims. In addition, Inter-Continental filed a memorandum in response and opposition to Carolina Door’s motion for summary judgment. Inter-Continental asserted its position as a third-party plaintiff against Carolina Door and argued that Carolina Door was solely responsible for any damages caused to Plaintiff.
On December 6, 2013, the trial court held a brief hearing and elected to preter-mit ruling on the motions for summary judgment filed separately by Carolina Door and Inter-Continental. The trial court also granted Plaintiff an additional 15 days to introduce any evidence or exhibits to counter the motions and the evidence introduced into the record by Carolina Door and Inter-Continental.
On December 20, 2013, Plaintiff filed a supplemental memorandum in opposition to the motions for summary judgment and attached the affidavit of Michael Panish, whom Plaintiff offered as an expert witness in the field of construction with an emphasis on doors and automatic doors.[2] Plaintiff averred ijhat4 the expert affidavit demonstrated genuine issues of material fact as to the installation, servicing, and repair of the revolving door and defendants’ failure to warn of potential hazards. In response, Carolina Door filed a motion to strike the expert affidavit of Michael Panish, arguing that the late introduction of an expert witness violated the trial court’s pretrial orders and the affidavit contained only unsupported, conclusory statements.
On March 14, 2014, the trial court held a hearing on the motions for summary judgment and the motion to strike. After hearing arguments, the trial court found that Plaintiff had failed to produce factual support of the alleged negligence of Carolina Door and granted Carolina Door’s motion for summary judgment. The trial court then stated it would deny InterContinental’s motion for summary judgment and would issue written reasons for judgment to explain what issues remained vis-a-vis Inter-Continental and Plaintiff.[3] At the conclusion of the hearing, the trial court admitted all parties’ exhibits into evidence and noted Carolina Door’s objection to the affidavit of Michael Panish; but the trial court did not rule on Carolina Door’s motion to strike the expert affidavit during the hearing.
Following the March 14, 2014 hearing, the trial court rendered two judgments. The trial court’s April 23, 2014 judgment granted Carolina Door’s motion for summary judgment, dismissing Plaintiffs claims against Carolina Door while preserving Inter-Continental’s third-party claims against Carolina Door. Following this judgment, Plaintiff filed a timely motion for appeal. Subsequently, on June 9, 2014, the trial court signed a judgment denying Carolina Door’s motion to strike the expert affidavit. Following the second judgment, the trial court 1 ^granted InterContinental’s motion for devolutive appeal of both trial court judgments.[4] The trial *1250 court also granted Carolina Door’s notice of intent to seek supervisory review of the June 9, 2014 judgment.
STANDARD OF REVIEW
Appellate courts review a trial court judgment granting a motion for summary judgment de novo using the same criteria applied by the trial court to determine the appropriateness of summary judgment, i.e., whether there is any genuine issue of material fact and whether the moving party is entitled to summary judgment as a matter of law. Schroth v. Estate of Samuel, 11-1385, p. 3 (La.App. 4 Cir. 4/18/12), 90 So.3d 1209, 1211; Schultz v. Guoth, 10-0343, pp. 5-6 (La.1/19/11), 57 So.3d 1002, 1005-06. Summary judgment is properly granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact.” La. C.C.P. art. 966(B)(2); Samaha v. Rau, 07-1726, p. 4 (La.2/26/08), 977 So.2d 880, 883.
On a motion for summary judgment, the mover bears the initial burden of proof. La. C.C.P. art. 966(C)(2). If, however, the mover will not bear the burden of proof at trial on the matter, then the mover’s burden is to point out the absence of factual support for one or more essential elements of the adverse party’s claims. \Jd. “To satisfy this burden, the mover must meet a strict standard showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact.” Richthofen v. Medina, 14-294, p. 5 (La.App. 5 Cir. 10/29/14), 164 So.3d 231, 234. A genuine issue is one upon which reasonable persons could disagree; “[i]n determining whether an issue is ‘genuine,’ courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.” Smith v. Our Lady of the Lake Hospital, Inc., 93-2312, p. 27 (La.7/5/94), 639 So.2d 730, 751. A material fact is one that may insure or preclude recovery, may affect a party’s ultimate success, or could determine the outcome of the case. Id; Smith v. Treadaway, 13-0131, pp. 4-5 (La.App. 4 Cir. 11/27/13), 129 So.3d 825, 828.
If the trial court determines that the mover has met this strict burden, then the burden shifts to the adverse party to present evidence demonstrating that material issues of fact remain. La. C.C.P. art. 966(C)(2); Treadaway, 13-0131, p. 4, 129 So.3d at 828. An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of its pleading; either by affidavits or other evidence as provided by law, the adverse party must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B); Garrison v. Old Man River Esplanade, L.L.C., 13-0869, p. 3 (La.App. 4 Cir. 12/18/13), 133 So.3d 699, 700-01; Melancon v. D & M Enterprises, 95-0644, pp. 4-5 (La.App. 4 Cir. 9/28/95), 662 So.2d 54, 57. Any doubt as to whether a genuine issue of fact remains must be resolved against granting the motion for summary judgment and in favor of trial on the merits. FMC Enterprises, L.L.C. v. Prytania St. Mary Con *1251 dominiums Ass’n, Inc., 12-1634, pp. 6-7 (La.App. 4 Cir. 5/15/13), 117 So.3d 217, 222-23 (citing Our Lady of the Lake Hosp., Inc., 93-2512, p. 27, 639 So.2d at 751).
DISCUSSION
On appeal of the trial court’s April 23, 2014 judgment granting Carolina Door’s motion for summary judgment, Plaintiff and Inter-Continental both argue that the expert affidavit of Michael Panish, in conjunction with the deposition testimony and exhibits submitted for the purposes of the motion hearing, sufficiently establishes genuine issues of material fact that preclude summary judgment in favor of Carolina Door. Inter-Continental and Plaintiff also argue that the trial court’s June 9, 2014 judgment denying Carolina Door’s motion to strike the expert affidavit of Michael Panish contradicts the trial court’s finding that no issues of material fact were presented in opposition to Carolina Door’s motion for summary judgment. In addition, Inter-Continental argues that both trial court judgments are prejudicial to Inter-Continental in defending itself against Plaintiffs claims of negligence associated with duties (installation, inspection, service, repair) specifically contracted to Carolina Door. Based on the inconsistency in judgments and the issues raised within the admitted expert affidavit, InterContinental and Plaintiff argue that the trial court erred in granting Carolina Door’s motion for summary judgment.
In light of the arguments raised in the appeal involving the expert affidavit, we turn first to the trial court’s June 9, 2014 judgment and determine whether the trial court erred in denying Carolina Door’s motion to strike Plaintiffs expert affidavit.
IsMotion to Strike
In its writ application, Carolina Door argues that the trial court abused its discretion in admitting the affidavit because well-established jurisprudence holds that expert witnesses introduced after trial court discovery deadlines have passed must be excluded. Carolina Door also argues that the trial court’s ruling contradicted the trial court’s statements, during the March 14, 2014 motion hearing, that the affidavit was untimely and included conclusory allegations.
 We review the trial court’s ruling on a motion to strike under an abuse of discretion standard. 727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C., 12-1014, p. 19 (La.App. 4 Cir. 8/21/13), 122 So.3d 1152, 1163. “[A] trial court is afforded vast discretion with regard to evi-dentiary rulings, and the court’s decision to admit or deny evidence will not be disturbed on appeal absent a clear abuse of discretion.” Guillot v. DaimlerChrysler Corp., 08-1485, p. 21 (La.App. 4 Cir. 9/24/10), 50 So.3d 173, 190.
Carolina Door argues that Plaintiffs late introduction of the expert affidavit of Michael Panish violates Louisiana law. Carolina Door relies on Dufrene v. Willingham, 97-1239 (La.App. 5 Cir. 10/28/98), 721 So.2d 1026, in support of its argument that the trial court should exclude an expert witness whose existence is unknown to the opponent and whose late introduction fails to comply with pretrial orders requiring disclosure. Carolina Door notes in this case that Plaintiff made no reference to Michael Panish or any other expert in his witness and exhibit lists filed on July 12, 2007 and March 7, 2012; and the trial court set a discovery cutoff date of July 20, 2012. Carolina Door states that Plaintiff introduced this expert affidavit of Michael Panish at the “eleventh hour” in violation of the pre-trial orders and solely for the purposes of delay. Citing La. C.C.P. art. 967(D), Carolina Door Largues that the expert affidavit must be excluded from the *1252 record and that the filing attorney should be ordered to pay reasonable costs and attorney’s fees incurred in responding to same.[5]
In response, Plaintiff asserts that he was in full compliance with the trial court’s discovery order and stated orders at the ■ hearing on December 6, 2013. Plaintiff states that his previous witness and exhibit lists, served on July 12, 2007 and March 7, 2012, were complete when submitted. Plaintiff then sought and retained Michael Panish as an expert in this case following the trial court’s December 6, 2013 ruling and order that Plaintiff had 15 days to supplement his opposition to the motions for summary judgment and introduce additional evidence. Plaintiff submitted the expert affidavit on December 20, 2013, attached to his supplemental opposition to the motion for summary judgment. Thus, Plaintiff asserts that he complied with all trial court orders and the trial court did not abuse its discretion in denying Carolina Door’s motion to strike the expert affidavit.
Upon our review, we find no abuse of discretion in the trial court’s June 9, 2014 judgment denying Carolina Door’s motion to strike the expert affidavit. First, we note that the case of Dufrene, cited by Carolina Door, is distinguishable from the instant case. In Dufrene, defendants identified two persons as expert witnesses two days before the start of trial. 97-1239, p. 10, 721 So.2d at 1031. In the instant case, no trial date had been set at the time of the Plaintiffs introduction |inof the expert affidavit, on December 20, 2013, or as of the date of the motion hearing, on March 14, 2014. The existence of a trial date has been noted by this Court as a key factor in the trial court’s discretion to admit or deny witnesses or evidence into the record. See Provosty v. ARC Const., L.L.C., 12-1015, p. 23 (La.App. 4 Cir. 3/20/13), 119 So.3d 23, 39. Also, in this case, the trial court specifically granted Plaintiff additional time to supplement .his opposition to the motion for summary judgment. At the hearing on December 6, 2013, the trial court preter-mitted ruling on the motions for summary judgment to allow Plaintiff an opportunity to introduce evidence, exhibits, or affidavits to counteract the evidence submitted by Carolina Door in support of its motion. When Carolina Door orally moved for the trial court to limit the evidence which Plaintiff would be allowed to introduce, the trial court stated, “[t]he Court is not going to place any limitations on whatever evidence can be done [sic].” Thereafter, Plaintiff timely filed his supplemental opposition to the motion for summary judgment with the attached expert affidavit of Michael Panish. Although we note that during the March 14, 2014 motion hearing the trial court opined that the Plaintiffs expert affidavit was “arguably” untimely and contained conclusory allegations, the trial court was within its discretion to take the matter under advisement and ultimately deny Carolina Door’s motion to strike. Consequently, we find no abuse of discretion in the trial court’s ruling denying the motion to strike the expert affidavit.
Motion for Summary Judgment
We now turn to the trial court’s April 23, 2015 judgment granting summary *1253 judgment in favor of Carolina Door. We review de novo Carolina Door’s motion for summary judgment and the evidence presented in support of that motion. In Carolina Door argues that Plaintiff failed to produce any factual support for its claims that Carolina Door failed to properly install, service, maintain, or repair the revolving door.[6] In support of its motion for summary judgment, Carolina Door submitted excerpts of deposition testimony and attached several exhibits.
According to the attached purchase order and invoice, Carolina Door was contracted through Crasto Glass & Mirror Co. to supply and install a Boon Edam automatic revolving door for Inter-Continental.[7] Carolina Door completed the order and installation on November 3, 2003. A one-year warranty and service agreement letter, dated November 14, 2003, from Carolina Door to Inter-Continental provides for the repair or replacement of “parts as detected to be faulty” by a representative of Carolina Door upon notification from Inter-Continental of any issues related to the revolving door.
Carolina Door also attached two documents related to maintenance issues and servicing of the revolving door at InterContinental. First, the engineer logbook from Inter-Continental for January 2, 2004 through January 11, 2004 makes the following references to the revolving door:
January 2: “Revolving door stop [sic] working, reset door — complete”
January 5: “Dennis check front revolving doors and turn them off. Keep jumping off the track.” This entry also notes, “contractor came out.”
January 6: “1st floor Entrance Revolving door off track, repair:”
January 9: “Revolving door is off because of high wind.”
January 10: “1st floor, turn back on revolving door.”
| ^January 11: “Revolving door rubber on left side off is coming off turn off the door:”
In addition, a warranty service report indicates that a Carolina Door representative responded to a warranty service call at Inter-Continental on January 9, 2004.[8] The report notes the nature of the problem as “door breaking out” and the work performed is noted as “door breaking out when people and wind are pushing, adjusted door.”[9] Carolina Door did not attach any other service call reports.
According to the deposition testimony of Mr. Tim Corson, a Carolina Door representative, Carolina Door had no record of problems occurring during the installation or servicing of the revolving door at InterContinental. Mr. Corson acknowledged that Carolina Door was responsible for responding to any service calls regarding issues with the revolving door. He further acknowledged that Carolina Door received and responded to service calls at InterContinental during the time after the installation but prior to the alleged incident *1254 on January 9, 2004. From his recollection, Mr. Corson stated that those service calls were for the adjustment of sensors on the door and for “adjusting of the latches that hold the doors in place.” He stated it was necessary to adjust the doors “to make them safe and as the use of the door goes on we make adjustments to make the door work properly.”
According to the deposition testimony of Anthony Henry, the assistant chief engineer for Inter-Continental, hotel employees were informed to contact Carolina Door regarding any issues or concerns with the revolving door. Mr. Henry stated 11s“[i]t was under warranty so there’s no touching the door;” and when he knew of a problem, he would call Carolina Door. When questioned about whether problems arose with the revolving door after its installation, Mr. Henry stated “[tjhere was a problem with the door collapsing too easily.” Mr. Henry understood that the door was designed to collapse and fold as part of its safety mechanism; he recalled, however, “[t]he setting sensitivity, whatever breakaway point was in the door, was not set correctly or was not put in correctly” causing the door to collapse too easily. Mr. Henry stated that Carolina Door responded to service calls regarding this particular problem with the revolving door more than once after installation.
When questioned about the specific entries in Inter-Continental’s engineering log from January 2 through January 11, 2004, Mr. Henry did not have any direct knowledge or recollection of those particular incidents but stated that Carolina Door would have been called to address those issues. Mr. Henry did recall that a person filed an incident report with Inter-Continental in January, 2004, claiming an injury from the door collapsing, but he had no other information regarding that alleged incident. When asked if he was aware of “further issues in regards to the folding doors collapsing too easily” subsequent to the final maintenance log note on January 11, 2004, Mr. Henry stated, “I remember that they [Carolina Door] had repaired them and we didn’t have anymore problems.”
Relevant to the collapsing mechanism of the revolving door, Carolina Door submitted the blueprints and architectural specifications for the Boon Edam TQ-Automatic 3-Wing revolving door installed at Inter-Continental. The blueprints indicate that there is a “Collapsing Mechanism” and a “Collapsible Door Wing” for the revolving door. The Boon Edam architectural specifications describe the equipment necessary for the “Collapsing Mechanism” as “[p]recision-engineered ludoor hangers and disks to allow the door wings to be collapsed, or folded and stored in a bookfold position.” The manufacturer’s specifications further state, “[t]he wings shall be capable of being collapsed outward .under pressure on the outer stile not to exceed 130 pounds to meet NFPA [National Fire Protection Association], BOCA [Building Officials and Code Administrators International, Inc.] code requirements.”[10] Based on these blueprints and specifications, Carolina Door argues it did not fail to properly install or service the revolving door and that the revolving door was designed to collapse in the manner described by Plaintiff during the incident on January 9, 2004.
*1255 In excerpts from his deposition, Plaintiff stated that he was working as a courier with Jerry Gordon and another courier, Mr. Dixon, on January 9, 2004, when they walked through the Inter-Continental and exited through the revolving door. Mr. Gordon exited first through one compartment of the revolving door; then Mr. Dixon exited. Plaintiff stated'that he got into the third compartment, “[a]nd when I got in, it started and then it stopped.” When the door stopped, Plaintiff walked into the glass panel in front of him and the panel behind him “broke loose and jammed [him] in between the two.” Plaintiff stated that a bellman and a doorman at the InterContinental assisted in getting him released from between the revolving door panels.
Jerry Gordon provided a similar description of the incident on January 9, 2004. He stated that he and Mr. Dixon exited through the first and second compartments of the revolving door without any trouble; then Mr. Gordon heard a |1filoud crashing sound and turned around to see Plaintiff stuck between two door panels. Mr. Gordon also stated that he walked through the Inter-Continental everyday for his job as a courier and he had previously walked through the revolving door without incident. Mr. Gordon knew that this revolving door had been installed not long before the incident on January 9, 2004; and prior to that date, he had seen the revolving door roped off with people working on it or “testing” it. When asked his opinion of what may have caused the accident, Mr. Gordon acknowledged that the wind was very strong on the date of the incident and could have caused the door panels to break loose; but he also noted from his observations of the work being performed on the revolving door that it appeared there was some “complication” with the revolving door since its recent installation.
Based on these excerpts from Mr. Gordon’s and Plaintiffs depositions, Carolina Door argues that the descriptions of the incident support its position that the revolving door collapsed in accordance with its design as depicted by the blueprints and specifications. Moreover, Carolina Door argues all of the exhibits and deposition testimony show that there is no factual support for Plaintiffs claim that the incident occurred as a result of Carolina Door’s negligence by failing to properly install, service, maintain, or repair the revolving door. Although the trial court agreed with Carolina Door’s argument, we find that the evidence presented does not clearly exclude all doubt as to whether Carolina Door properly installed, serviced, and repaired the revolving door.
In our de novo review of Carolina Door’s supporting documents in light of Plaintiffs opposing expert affidavit, we find issues of material fact remain regarding Carolina Door’s contractual duties and actions in installing, servicing, and repairing the revolving door. Carolina Door’s exhibits reveal that Carolina l1fiDoor was solely responsible for the installation, maintenance, service, and repair of the revolving door. According to Mr. Henry, Inter-Continental employees were advised to report any problems with the door and to contact only Carolina Door for all maintenance and repair issues. The maintenance log indicates Inter-Continental contacted Carolina Door several times in the week prior to Plaintiffs incident; and Mr. Henry recalled there was a problem with the door collapsing too easily. Although the parties do not dispute that the collapsing mechanism was a feature of this revolving door, we do not find that Carolina Door’s documentation resolves all issues regarding the maintenance, servicing, or adjustments of the door in response to the service calls. We *1256 also view these documents in light of Plaintiffs opposing expert affidavit.
In opposition to the motions for summary judgment filed by Carolina Door and Inter-Continental, Plaintiff submitted the expert affidavit of Michael Panish.[11] The affidavit states Mr. Panish’s qualifications as an expert in the field of construction with an emphasis on doors, automatic doors, and door hardware. Mr. Panish attests to the documents he reviewed in this case and states his expert opinion on several matters relating to the installation and maintenance of the revolving door. Based on his review of the facts and documents, Mr. Panish states several findings, including that the door was not installed in accordance with the manufacturer’s specifications; that the door was not properly inspected or serviced on a regular basis; and the door’s component parts were not properly maintained or repaired as needed. Mr. Panish also opined that both defendants were negligent in 117failing to warn of the potential danger posed by the collapsing mechanism of this revolving door.
Upon our review of Plaintiffs expert affidavit and all evidence admitted on Carolina Door’s motion for summary judgment, we find there are unresolved issues of material fact that preclude summary judgment in favor of Carolina Door. (“[T]he mover’s supporting documents must be closely scrutinized and the non-mover’s indulgently treated ... inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party.” Richthofen, 14-294, p. 5, 164 So.3d at 234.) Here, we find questions remain regarding Carolina Door’s installation and servicing of the door in accordance with design and safety specifications and whether Carolina Door had a responsibility to warn of the potential for the revolving door to collapse.
CONCLUSION
For the foregoing reasons, we reverse the trial court’s April 23, 2014 judgment granting the motion for summary judgment in favor of Carolina Door and we remand this matter for further proceedings. With regard to the trial court’s June 9, 2014 judgment denying Carolina Door’s motion to strike the expert affidavit, we deny the writ.
JUDGMENT ON APPEAL REVERSED AND REMANDED; WRIT DENIED.

. By this Court’s own motion and order, the application for supervisory review and the appeal were consolidated to promote judicial efficiency and in the interest of judicial economy. See Young v. United States Auto. Ass’n Cas. Co., 07-1590, p. 1 (La.App. 4 Cir. 6/10/09), 15 So.3d 327, 329, n. 1.

. Plaintiff also attached excerpts from his own deposition testimony and the deposition of Jerry Gordon, an alleged witness to the incident at Inter-Continental.

. To date, the trial court has not issued written reasons or signed a judgment denying Inter-Continental’s motion for summary judgment.

.Inter-Continental filed its motion for devol-utive appeal within the time delays provided by La. C.C.P. art.2087 and, therefore, the trial court properly granted Inter-Continental's motion for devolutive appeal of the April 23, 2014 judgment. However, the trial court's June 9, 2014 judgment denying Carolina Door’s motion to strike is an interlocutory ruling that is not generally appealable. See *1250 La. C.C.P. art. 1841; see Vegelos v. Abramson, 12-1235, p. 6 (La.App. 4 Cir. 10/2/13), 126 So.3d 639, 643-44. Although an interlocutory ruling is not generally appealable, it may be subject to appellate review in conjunction with a final appealable judgment rendered on the merits of the case. See Benton Specialties, Inc. v. Cajun Well Service, Inc., 09-506, p. 4 (La.App. 3 Cir. 6/10/09), 13 So.3d 257, 259. Pursuant to this Court’s appellate and supervisory jurisdiction, we review the trial court’s April 23, 2014 and June 9, 2014 judgments in this appeal. See supra n. 1.

. La. C.C.P. art. 967(D) provides:
D. If it appears to the satisfaction of the court at any time that any of the affidavits presented pursuant to this Article are presented in bad faith or solely for the purposes of delay, the court immediately shall order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney fees. Any offending party or attorney may be adjudged guilty of contempt.

. Carolina Door also argues that Plaintiff could not produce any evidence in support of his claims that Carolina Door owned or had custody of the revolving door or manufactured and designed the door. It is undisputed by the parties on appeal that Carolina Door did not design, manufacture, own, or have custody of the revolving door at issue.

. Neither Crasto Glass & Mirror, the contractor, or Boon Edam, the designer and manufacturer of the revolving door at issue, have been named as parties to this suit.

. The time of the service call is not clearly indicated on the report.

. The report includes a "ANSI Safety Checklist” 9 for checking various operating functions of the automatic revolving door; no boxes on this checklist were marked.

. A separate document prepared by the manufacturer, entitled "Statement Re: Revolving Door Code Compliance," states Boon Edam's compliance with three industry standard building codes, including the NFPA and BOCA, that require revolving doors be "capable of being collapsed when a force of not more than 130 pounds” is applied to the outer edge of the wing.

. Affidavits submitted in support or opposition to a motion for summary judgment shall be made on personal knowledge, shall set forth fact that would be admissible in evidence, and shall show that the affiant is competent to testify to the matter stated therein. La. C.C.P. art. 967.